PATTERSON v. STANDARD ACCIDENT INSURANCE CO.

1. Insurance—Automobiles—Accident Policy—Interpretation.
   Provisions of an automobile accident policy stipulating that the insurer should defend any suits brought against the owner of a car on account of automobile accidents, did not relate to a prosecution for manslaughter arising out of the negligent operation of the car so as to require the insurer to defend against that kind of proceeding.

2. Same—Suits—Words and Phrases.
   The word "suit," as applied to legal controversies, strictly or technically, means proceedings in equity, as distinguished from an action at law, but it is used in a broader sense to include the prosecution or pursuit of a demand or claim generally where the party suing claims to obtain something to which he has a right. If it is properly employed to include criminal actions, a construction of the policy as a whole leads to the conclusion that indemnity against civil liability only was intended by the parties.

Error to Branch; Knowlen, J. Submitted November 25, 1913. (Docket No. 89.) Decided December 20, 1913.

Assumpsit by James R. Patterson against the Stand-

ard Accident Insurance Company. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Joseph L. Hooper* and *Bernard· J. Onen,* for appellant.

*Keena, Lightner, Oxtoby & Oxtoby,* for appellee.

STEERE, C. J. This action was brought on a certain so-called accident policy of insurance, issued to plaintiff by defendant, for his protection from specified losses which might result to him in connection with the use of two designated automobiles within a stated period of time.

Within the period covered by the policy, a young man named Reagan was killed in a collision with one of the automobiles mentioned, while plaintiff was driving it. An inquest held over the remains of the young man resulted in a finding of the coroner's jury that he came to his death through plaintiff's negligence in operating his automobile, and criminal prosecution was recommended. An agent of defendant, experienced in that class of work, made an investigation of the accident, viewing the premises and taking the statements of witnesses, and attended the inquest. He informed plaintiff that the company would defend him in any civil action brought against him for damages, but that the insurance did not cover criminal cases.

Plaintiff was subsequently arrested and prosecuted for manslaughter. He requested the insurance company to defend him, which it declined to do on the ground that its policy did not include criminal prosecutions. He then employed his own counsel, being ultimately tried for the offense and found not guilty by the verdict of a jury. An action, entitled *Reagan* v. *Patterson,* was also begun against him in the

Branch county circuit court by the father of deceased, in which plaintiff claimed $10,000 damages for the death of his son; the case involving the same facts as the criminal prosecution. At the time this case was argued here, the insurance company was defending that civil case for damages, under the requirements of its policy. Plaintiff expended $2,258.46 in attorney fees and other expenses in his defense in the criminal prosecution against him for manslaughter. This action is to recover from defendant those expenditures.

Defendant's obligations as stated in the policy in question were as follows:

"(1) To indemnify the assured named and described in the declarations against loss from the liability imposed by law upon him for damages on account of bodily injuries, including death, at any time resulting therefrom, accidentally sustained by any person or persons, by reason of the maintenance or use of any of the automobiles enumerated and described in said declarations, provided such bodily injuries are suffered within the policy period therein defined. This policy shall also cover such bodily injuries if caused by means of loading or unloading goods carried on automobiles used for transportation and delivery of materials or merchandise and so specified in said declarations.

"(2) To serve the assured upon notice of such injuries by such investigation thereof, or by such negotiation or settlement of any resulting claims as may be deemed expedient by the company.

"(3) To defend in the name and on behalf of the assured any suits which may at any time be brought against him on account of such injuries, including suits alleging such injuries and demanding damages therefor, although such suits, allegations or demands are wholly groundless, false or fraudulent.

"(4) To pay all costs taxed against the assured in any legal proceeding defended by the company according to agreement 3 above, and all interest accruing after entry of judgment upon such part of same

as is not in excess of the company's limit of liability as hereinafter expressed; and

"(5) To reimburse the assured for the expense incurred in providing such immediate surgical relief as is imperative at the time of the accident."

It is claimed by plaintiff that the criminal prosecution instituted against him for manslaugther was a suit brought against him on account of bodily injuries alleged to have been sustained by reason of the use of one of the automobiles described in the policy; that under the agreement in said paragraph 3 the insurance company was obligated to defend such suit; that, having refused to do so, it is liable to him on breach of the contract for expenditures actually and necessarily made by him in employing counsel and assuming the defense of said criminal case.

The two general grounds of defense urged and argued are:

"(1) That the word 'suit' does not include criminal prosecutions brought on behalf of the people of the State of Michigan; and

"(2) That it would be against public policy to permit an insurance company to agree in advance to defend a criminal proceeding."

The word "suit," unqualified by adjective or context, has possible meanings foreign to this inquiry. When used with reference to courts, it necessarily implies a lawsuit, defined by the Century Dictionary as "a suit at law or in equity; an action or a proceeding in a civil court; a process in law instituted by one party to compel another to do him justice." It would be a forced and unnatural construction to hold that the word as used in this accident policy is intended to comprehend criminal prosecutions instituted and conducted by public officials in the name of the people, presumably for the punishment and suppression of crime.

It must be conceded that the word "suit," as ap-

plied to legal controversies, both by the legal profession and others, is now used and recognized as a generic term of broad significance, often understood and used, even by legislatures and courts, to designate almost any proceeding in a court, even, though rarely, being applied to a criminal prosecution in certain connnections. *Commonwealth* v. *Moore,* 143 Mass. 136 (9 N. E. 25, 58 Am. Rep. 128). In its strict, technical meaning, more particularly where the distinction between law and chancery is retained, as in this State, is "a proceeding in equity, the proper word for a litigation in chancery, a usual and technical designation of a proceeding in equity," as distinguished from an action at law. 37 Cyc. p. 524.

But, irrespective of lexicographers and precise technical definition, the expression "criminal suit" is unnatural and awkward to the professional ear and is seldom used, even in common parlance. "Suit," in its general unqualified use in legal documents, such as the one before us, naturally means, and should be construed as intended to include, the mode or manner authorized and adopted by law to redress civil injuries. Such is the view expressed by able authorities when carefully considering and directly treating the question. Many of these authorities are cited in 37 Cyc. p. 522. In the lengthy and exhaustive case of *Cohens* v. *Virginia,* 19 U. S. (6 Wheat.) 264, Chief Justice Marshall says:

"What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a court of justice. The remedy for every species of wrong is, says Judge Blackstone, 'the being put in possession of that right whereof the party injured is deprived.' The instruments whereby this remedy is obtained, are a diversity of suits and actions, which are defined by the Mirror to be 'the lawful demand of one's right;' or, as Bracton and Fleta express it, in the words of Justinian, '*jus prosequendi in justicio*

*quod alicui debetur.'* Blackstone then proceeds to describe every species of remedy by suit; and they are all cases where the party suing claims to obtain something to which he has a right."

Furthermore, the two essentials of a contract of insurance which are to be considered together in this inquiry are the subject-matter and the risk insured against. The two automobiles constitute the subject-matter in relation to which the risk was assumed. Construing the various provisions of the policy together, we think it clearly evident that the controlling thought as to indemnity, the thing contracted for, was protection against risk of liability for injury resulting from accidents in the operation of the automobiles, not risk of public prosecution for crimes or misdemeanors committed in the use of them; and we conclude from the context that in this policy the word "suits" must be taken to mean civil suits which would determine the pecuniary liability of defendant for injury to person or property; suits which, because of its promised indemnity, defendant was necessarily interested in defending.

The learned circuit judge rightly held—

"That the provisions of said policy, read together, exclude any construction making it the legal duty of defendant to defend plaintiff on the criminal charge of manslaughter, and that consequently the defendant is entitled to an instructed verdict."

As these views dispose of the case, it becomes unnecessary to consider the other interesting question raised by defendant.

The judgment is affirmed.

Moore, McAlvay, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.