FRANKENMUTH MUTUAL INSURANCE COMPANY v PICCARD

Docket No. 89487. Argued January 8, 1992 (Calendar No. 9). Decided
  September 9, 1992. Rehearing denied 441 Mich —.

  Frankenmuth Mutual Insurance Company brought an action in
    the Kent Circuit Court against Charles Piccard, the owner of
    Town & Country Music Center, its insured under a commercial
    liability policy, seeking a declaration of its duty to defend and
    indemnify Piccard in an underlying suit brought by Thomas B.
    Deane, Jr., a fireman, and Susan C. Deane, his wife, for injuries
    suffered by Thomas Deane while putting out a fire deliberately
    set by the insured at his store. The court, R. Stuart Hoffius, J.,
    denied summary disposition for the insurer. The Court of
    Appeals, GRIBBS, P.J., and WALSH and J. F. FOLEY, JJ., affirmed
    in an unpublished opinion per curiam, holding that the insur-
    ance policy provided coverage to a fireman injured while put-
    ting out a fire intentionally set by an insured (Docket No.
    88701). The Supreme Court, in lieu of granting leave to appeal,
    remanded the case to the Court of Appeals, 433 Mich 894
    (1989). On remand, the Court of Appeals, GRIBBS, P.J., and D. E.
    HOLBROOK, JR., and MICHAEL J. KELLY, JJ., again affirmed in an
    unpublished opinion per curiam (Docket No. 122173). The
    insurer appeals.

    In an opinion by Justice RILEY, joined by Justices BRICKLEY
    and MALLETT, with Justice LEVIN concurring only in the result,
    the Supreme Court held:

    The policy does not provide coverage for the property damage
    resulting from Piccard's intentional act. However, the bodily
    injury suffered by Deane was unintended, and, accordingly,
    Frankenmuth must defend Piccard in this personal injury suit
    brought by Deane.

    Justice RILEY, joined by Justices BRICKLEY and MALLETT,
    would further hold that the unforeseen consequences of an
    insured's intentional criminal act will preclude coverage where
    the conduct is addressed directly at an innocent person or the
    conduct constitutes the injury. In this case, the scope of the
    commercial liability policy issued by Frankenmuth and the risk
    that it covers applies to Piccard because the fire occurred at his
    business. Viewed from the standpoint of the injured person, the
    accident occurred when Deane unexpectedly fell from the roof

of. Piccard's music store and suffered bodily injury. Frankenmuth must defend Piccard in Deane's personal injury suit because there is no suggestion that Piccard intended to inflict bodily injury on anyone by setting his business on fire or that the bodily injury suffered by Deane was not the direct result of Piccard's conduct.

Affirmed in part and reversed in part.

Chief Justice CAVANAGH, joined by Justices BOYLE and GRIFFIN, dissenting, stated that where a direct risk of harm is intentionally created and property damage or personal injury results, there is no liability coverage even if the specific result was unintended. It is irrelevant that the character of the harm that actually results is different from the character of the harm intended by the insured. For coverage to exist, the injuries must have been caused by an occurrence, defined under the policy as an accident resulting in bodily injury or property damage unexpected and unintended by the insured. An accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

The act of intentionally burning a business, specifically intending to cause property damage, is not an accident and, therefore cannot be an occurrence for purposes of the insurance contract in this case. The accidental nature of the fireman's fall cannot convert the intentional act of the insured into an accident. In the plain language of the contract, there is no coverage unless the injury was caused by an occurrence, and an "occurrence" must be an accident.

*Nelson & Kreuger, P.C.* (by *Steven L. Kreuger*), for the plaintiff.

*Dilley, Dewey & Damon, P.C.* (by *Jonathon S. Damon*), for defendants Deane.

RILEY, J. In *Group Ins Co v Czopek,* 440 Mich 590; 489 NW2d 444 (1992), and *Auto-Owners Ins Co v Churchman,* 440 Mich 560; 489 NW2d 431 (1992), the companion cases released today, we refined two aspects of our decision in *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989). First, we concluded that as long as the insured possessed the intent to inflict some type of

injury, the intentional act exclusion applies, and, second, that the insured's mental capacity is relevant to determining whether the insured possessed the intent to inflict injury on a third party. In the instant case, we consider one additional issue not addressed in the *Allstate* decision. That is, "whether the definition of 'occurrence' in [a] policy of insurance includes the unforeseen consequences of an intentional criminal act of the insured."[1]

The insured's contract is a commercial liability policy, which, unlike the homeowner policies at issue in *Czopek* and *Churchman* that provide a broad range of coverage, limits coverage to those events

> caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises . . . .[2]

---

[1] 437 Mich 1035 (1991).

[2] The policy language provided the following coverage:

Section II Liability Coverage
  Bodily Injury Liability
  Property Damage Liability
  1. The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

  bodily injury or
  property damage

to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit

In *Allstate v Freeman, supra,* we set forth the analytical process to be followed by this Court in construing insurance contracts. We concluded that we must first determine whether an insurance policy arguably provides coverage for the insured, then, whether the act of intentionally destroying a business is an "occurrence," defined in the policy as an "accident," and, finally, using the policy-blended subjective standard, whether injury to the innocent third party was "expected or intended from the standpoint of the insured."[3]

Having considered the facts in light of the above, we conclude that although the policy issued to Piccard does not provide coverage for the property damage created by his intentional act, the bodily injury suffered by Deane was unintended. Accordingly, Frankenmuth Mutual must defend Piccard in this personal injury suit brought by Deane.

I

On the night of February 16, 1984, Charles Piccard, the owner of Towne & Country Music Store, went to his business to repair some musical instruments after the store had closed. In a deposition taken for the purposes of discovery in this case, Piccard described what happened after he arrived at the store.

> When I was starting to prepare for it [fixing a guitar], I had my soldering iron plugged in and I

after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

[3]  [T]he proper construction of a contract requires that we first determine whether coverage exists, and then whether an exclusion precludes coverage. [*Allstate, supra* at 668 (RILEY, C.J.).]

was getting my pad out to put the instrument on it. When I went to get solder to do the job, there wasn't any left because it had all been used up and not been replaced, which was just kind of one extra frustration for the day. In my activities in the room I had knocked over some cleaning fluid onto the pad that I would set the instruments on so as to—a felt object, and knocked it over the top of that, and at that point, realizing I didn't have any solder, didn't have the stuff I needed to do the job I was there for, I just left the soldering iron plugged in. I went out into the other room, I knew that the soldering iron was plugged in and laying there on the pad; I just reached a point that I just didn't want to be there anymore, and I just left, and I left it, I knew it was plugged in. I knew that it may cause a fire . . . .

Defendant Thomas Deane, a fire fighter on duty for the City of Grand Rapids, answered the call to put out the fire. While on the roof of a neighboring store, Deane, blinded by smoke, stepped over a wall thinking that there was another roof on the other side. Unfortunately, there was no roof and he fell to the ground severely injuring his knee, causing him to be permanently disabled and unable to work as a fire fighter. Deane and his wife sued Piccard for negligence and loss of consortium. The three neighboring stores, which received approximately $60,000 worth of damage, sued Piccard as well.

Frankenmuth Mutual, the insurer who issued a commercial liability policy to Piccard, initiated this declaratory judgment action seeking a determination that coverage is precluded under the terms of the policy, because Piccard intentionally caused property damage. The trial court denied Frankenmuth's motion for summary judgment on the theory that although Piccard intended property damage, he did not intend bodily injury, so,

therefore, under the terms of the policy, coverage existed. The court then granted Deane's motion, reasoning that his injuries were caused by an "occurrence," as defined in the policy, and, therefore, Frankenmuth owed a duty to defend Piccard.

The Court of Appeals affirmed the trial court, reasoning that because Piccard did not intend to injure Deane by setting the fire, coverage under the policy existed.[4] In lieu of granting leave to appeal, we remanded this case in light of our decision in *Allstate v Freeman, supra,* and directed the Court of Appeals to discuss whether the intentional burning was an "accident" within the meaning of the insurance policy's definition of "occurrence," regardless of whether the bodily injury was expected or intended from the standpoint of the insured.[5] On remand, the Court of Appeals considered the issue and concluded that "an unexpected and unintended injury caused by an accident arising out of the ownership of the insured premises fell within the coverage of this policy."[6] We granted leave to appeal and directed the parties to include in their arguments the issue of "whether the definition of 'occurrence' in the policy of insurance includes the unforeseen consequences of an intentional criminal act of the insured.'"[7]

II

When an innocent person is injured through the negligent conduct of another, society demands that

---

[4] Unpublished opinion of the Court of Appeals, decided October 19, 1988 (Docket No. 88701).

[5] 433 Mich 894 (1989), clarification granted 434 Mich 855 (1990), reconsideration granted 434 Mich 902 (1990).

[6] Unpublished opinion of the Court of Appeals, decided April 5, 1990 (Docket No. 122173).

[7] 437 Mich 1035 (1991).

the injured person be compensated for his loss.[8] Society, however, will not allow an individual to shift the economic responsibility to an insurer for conduct that it seeks to discourage and deter.[9] Indeed, were a person able to insure himself against the economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be lacking. *Auto-Owners Ins Co v Churchman*, RILEY, J., p 576. Further, as a matter of moral principle

> [a] wrongdoer should never profit from crime. It is axiomatic that a person who owns insured property and causes it to burn is not entitled to collect the insurance proceeds. [*Lichon v American Universal Ins Co*, 435 Mich 408, 413; 459 NW2d 288 (1990). Citations omitted.]

Frankenmuth first argues that we ought to focus on the "ownership, maintenance or use" clause and concludes that because arson is not attendant to the "ownership, maintenance or use" of the insured's business coverage is precluded. In making this argument, Frankenmuth assumes, without expressly concluding, that there is an element of deterrence in this clause. We disagree. We are persuaded that the phrase "ownership, maintenance or use" is used by the insurer to define the subject matter and the nature of the risk assumed.[10] In other words, the risk covered by the commercial liability insurance issued to Piccard was limited to those events that occurred on or at the premises of his business. Under the terms of the policy, for example, Piccard's home is not

---

[8] Keeton & Widiss, Insurance Law, § 5.4(d), p 525.

[9] *Id.*

[10] *Patterson v Standard Accident Ins Co*, 178 Mich 288, 293; 144 NW 491 (1913). See also 2 Couch, Insurance, 2d (rev ed), § 15:26, p 209.

covered, nor is his health care. Coverage is limited simply to the risks involved in operating his music store.

The problem that arises in focusing on the subject matter of the policy, rather than the scope of its covered risk, is that in some instances, truly accidental incidents caused by the insured will be precluded from coverage. For example, assuming for the moment that Piccard smoked a pipe while working in his store, set the pipe down and forgot about it, left the store, and the store caught on fire, under Frankenmuth's analysis, coverage would be precluded. Why? Because smoking a pipe is not attendant to the "ownership, maintenance or use" of the insured's premises. This hypothesis illustrates the problem implicit in focusing on the narrow phrase "ownership, maintenance or use," rather than concentrating on the scope of the covered risk afforded to the insured.

Therefore, we believe that we must consider the "ownership, maintenance or use" clause in a manner consistent with its scope and application. While recognizing that the duty to defend extends to allegations that arguably come within the policy coverage, *Allstate v Freeman, supra* at 662, and the insurer's express intention to defend even frivolous risks,[11] we conclude that the scope of the policy, and the risk that it covers, applies to Piccard because the fire occurred at his business. *Allstate, supra. Detroit Edison Co v Michigan Mut*

___

[11] Presumably, in order to protect itself, Frankenmuth Mutual has expressly provided in the policy issued to Piccard that

the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . . [See n 2.]

*Ins Co,* 102 Mich App 136, 141-142; 301 NW2d 832 (1980). Having reached this conclusion, we next consider whether Piccard's act was an "occurrence" as defined in the policy.

### III

In the commercial liability policy issued to Piccard, Frankenmuth Mutual has defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[12] There are three parts to this definition which must be satisfied before coverage exists under the terms of the policy. First, we must consider whether the injuries suffered by Deane were the result of an "accident."

In *Allstate v Freeman, supra* at 668-672, we considered the meaning of the word "accident," which, as in this case, was used to define the word "occurrence," and concluded that for the purposes of insurance law

"an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." [*Metropolitan Property & Liability Ins Co v DiCicco,* companion to *Allstate, supra,* p 670.]

Under this definition, an "accident" is evaluated from the standpoint of the injured person, rather

---

[12] "Occurrence" is defined by the insured in its policy as follows:

"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

than the insured. *Guerdon Industries, Inc v Fidelity & Casualty Co of New York,* 371 Mich 12, 18-19; 123 NW2d 143 (1963). This conclusion is in accord with the language of the contract and the majority rule that

the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed *but the time when the complaining party was actually damaged.*[13] [11 Couch, Insurance, 2d (rev ed), § 44:8, p 194. See also *Moss v Shelby Mut Ins Co,* 105 Mich App 671, 679; 308 NW2d 428 (1981). Emphasis added.][14]

In the instant case, the Court of Appeals concluded that the "accident" occurred when Thomas Deane unexpectedly fell from the roof of Piccard's music store and injured himself.[15] We agree. In so concluding, the Court of Appeals followed the principle we established in *Freeman* that it is possible to have a cause of action where the intentional conduct will result in unintended and unexpected injury thus constituting an "accident"

[13] Anno: *Occurrence of accident or injury as during, or before or after, time period of coverage of liability policy,* 57 ALR2d 1385. Anno: *Event as occurring within period of coverage of "occurrence" and "discovery" or "claims made" liability policies,* 37 ALR4th 382; 43 Am Jur 2d, Insurance, § 243, pp 323-324; 43 Am Jur 2d, 1992 Supp, § 243, pp 65-68; 45 CJS, Insurance, § 824 *et seq.*

[14] See also *Employers Mut Liability Ins Co of Wisconsin v Michigan Mut Auto Ins Co,* 101 Mich App 697, 703-704; 300 NW2d 682 (1980); *Allstate Ins Co v Demps,* 133 Mich App 168, 176-177; 348 NW2d 720 (1984), lv den 421 Mich 852 (1985); *Frankenmuth Mut Ins Co v Eurich,* 152 Mich App 683, 687; 394 NW2d 70 (1986), lv den 426 Mich 881 (1986); *Transamerica Ins Co of Michigan v Safeco Ins Co,* 189 Mich App 55, 59; 472 NW2d 5 (1991).

[15] Unpublished opinion per curiam of the Court of Appeals, decided October 19, 1988 (Docket No. 88701), slip op, pp 2-3; on remand, unpublished opinion per curiam of the Court of Appeals, decided April 5, 1990 (Docket No. 122173), slip op, pp 2-3.

under the policy language. *Allstate, supra* at 670.[16]
Thus, under the foregoing principle and for the
purpose of this case, the accident occurred when
Deane unexpectedly fell from the roof.

Next, under the second part of the definition of
"occurrence," we must determine if Deane suffered
"bodily injury."[17] Frankenmuth Mutual does not
dispute that Thomas Deane suffered "bodily in-
jury" when he accidentally fell while fighting the
fire at Piccard's music store. Accordingly, this
element of the definition of "occurrence" has been
met.

Finally, under the third part of the definition of
"occurrence," we must consider if the "bodily in-
jury" suffered by Thomas Deane was "expected [or]
intended from the standpoint of the insured," Mr.
Piccard. In *DiCicco, Churchman,* and *Czopek,* we
determined that when using the policy-blended
subjective standard[18] to evaluate insurance con-
tract exclusions that have the language "expected
or intended from the standpoint of the insured,"
the focus will be on the insured's intentional act to
cause some type of injury. *DiCicco, supra* at 679,
682 (opinion of RILEY, C.J., GRIFFIN, J., concur-
ring); *id.* at 718, n 12 (opinion of BOYLE, J., LEVIN,
BRICKLEY, and CAVANAGH, JJ., concurring); *id.* at
731, n 11 (opinion of ARCHER, J.); *Churchman, supra,*
RILEY, J., pp 577-578; *Czopek, supra,* MALLETT, J.,
pp 596-597. In applying this standard, we look at
the insured's conduct from his perspective and

[16] See also 10 Couch, Insurance, 2d (rev ed), § 41:7, pp 9-11; 7A
Appleman, Insurance Law & Practice, § 4492.02, pp 32-33.

[17] See, generally, 10 Couch, n 16 *supra,* § 41:6, pp 8-9.

[18] My views on this matter remain unchanged from those set forth
in my separate opinion in *DiCicco, supra* at 676-678. I would apply
the objective standard and conclude that although the insured is
presumed to have intended the consequences of his activity, the
injury to Deane was unintended. See also *Auto-Owners Ins Co v
Churchman,* RILEY, J., p 573, n 1.

evaluate either his intent to cause some type of injury to an innocent third party or his awareness that harm was likely to follow from the performance of his intentional act.

On remand in the instant case, the Court of Appeals applied the *DiCicco* subjective standard and concluded that "Piccard did not expect or intend that setting the fire would result in injuries to Deane."[19]

In its analysis, the Court of Appeals recognized that the *DiCicco* policy-blended subjective standard is not the same as the purely subjective standard as adopted in *Morrill v Gallagher,* 370 Mich 578, 583; 122 NW2d 687 (1963). In *Morrill,* we held that where an insurance contract excludes from coverage injury or destruction " 'caused intentionally by or at the direction of the insured,' " both an intentional act and an intentional injury must be demonstrated. As the Court of Appeals recognized, the purely subjective standard, as applied in *Morrill* and its progeny, is distinguishable from the policy-blended subjective standard because Frankenmuth's exclusionary clause encompasses both intended *or expected injury,* rather than simply intended injuries as in *Morrill.* There is a significant difference between insurance contracts that exclude both intentional and expected injuries and those that merely exclude intentional injuries.[20] In recognizing this distinction, a panel of the Court of Appeals has concluded that in order for an insurer to avoid liability for an "expected" injury, it must

[19] See n 15 *supra,* slip op, p 3.

[20] *Yother v McCrimmon,* 147 Mich App 130, 133-134; 383 NW2d 126 (1985); *State Farm Fire & Casualty Co v Jenkins,* 147 Mich App 462, 467-468; 382 NW2d 796 (1985); *State Farm Fire & Casualty Co v Groshek,* 161 Mich App 703, 710; 411 NW2d 480 (1987); *Auto-Owners Ins Co v Churchman,* RILEY, J., p 576, n 8; *Linebaugh v Berdish,* 144 Mich App 750, 755; 376 NW2d 400 (1985); *Allstate Ins Co v Maloney,* 174 Mich App 263, 266-267; 435 NW2d 448 (1988).

be shown that the injury suffered by the victim is the natural, foreseeable, expected, and anticipatory result of an intentional act by the insured. *Group Ins Co of Michigan v Morelli,* 111 Mich App 510, 516; 314 NW2d 672 (1981). We agree with the *Morelli* analysis, consistently applied by the Court of Appeals,[21] in cases where the language of an exclusionary clause precludes coverage for an insured where bodily injury or property damage either is intended or expected.

It is necessary, therefore, for us to evaluate the record in the instant case to determine if Piccard intended to inflict some type of bodily injury upon Deane, or if Piccard's conduct caused Deane's bodily injury. Our inquiry is limited to three separate sources of information in which Piccard admitted his intention to destroy his property: his statement to the arson investigators,[22] his statement to the court when entering his plea of guilty[23] of the felony of preparing to burn real property,[24] and his depositional testimony.[25] Piccard contends that these admissions only indicate his intent to destroy his property, that he never intended to cause

[21] See n 20.

[22] See appendix A.

[23] The plea is not dispositive in this case. In order to be convicted for preparing to burn real property, it must be established that a defendant

1. Used, arranged, placed, devised or distributed;

2. Any inflammable, combustible or explosive material, liquid or substance, or any device;

3. In or about any personal property of the value of more than $50 or real property of any value;

4. With the intent to wilfully and maliciously set fire to or burn the property. MCL 750.77; MSA 28.272. See also 12 Michigan Practice, § 10.30, p 331.

This crime does not contain an element of intentional or unintentional injury to a person. At most, Piccard's plea only establishes that he intentionally destroyed his store.

[24] See *ante,* pp 542-543.

[25] See appendix B.

bodily injury to anyone, and, therefore, that the insurance company has a duty to defend him in this personal injury lawsuit instituted by Deane. The insurer contends, however, that although he might not have intended to injure anyone, such injuries are foreseeable because it may be presumed that a fire department will be called upon to put out a fire, and in the course of the fire-fighting effort, a fireman may be injured. Moreover, they argue Piccard's intent to cause bodily injury need not be established because he admitted his intention to cause property damage, thus precluding him from coverage.

There are, of course, certain intentional acts where the expectation of injury may be presumed from the intentional act even if the insured only intended to cause property damage. For example, an individual who wishes to destroy a building (which he owns and has insured) by setting a bomb to go off at a time of day when people are in the building may be presumed to have known (expected), at the very least, that somebody might be injured. Yet, under the facts of this case, this presumption cannot occur. We can conclude from Piccard's act that the fire department would be called and that a fire fighter would be on the scene to extinguish the fire. We can also conclude that extensive property damage will be the resulting effect of Piccard's intentional and criminal act. However, given the facts presented to the Court, we cannot conclude that by intentionally destroying his property, Piccard expected bodily injury to occur. The record reveals that the fire was set in the evening after his store and the adjacent stores were closed. The record also indicates that no individual was in the area when the fire was set. There is simply no reason to conclude, from the facts presented, that Piccard intended to injure a

fire fighter by having him step off a roof while fighting the fire at his store.

The language of the exclusion requires us to consider whether Piccard intended or expected to inflict some type of bodily injury to Deane. Inasmuch as we are only looking at the underlying cause of the injury, rather than the nature of the complaint, *Allstate, supra* at 690, Piccard's intent to cause property damage is irrelevant. Because the record is devoid of any suggestion that Piccard intended to injure Deane, and because Deane's injury cannot be presumed to have occurred as a direct result of Piccard's intentional act, coverage is not precluded.

IV

In summary, we conclude that the unforeseen consequences of an insured's intentional criminal act will preclude coverage where the conduct is addressed directly at the innocent person, *Allstate, supra* at 688-689, or the criminal conduct constitutes the injury. *Auto-Owners Ins Co v Gardipey,* 173 Mich App 711, 715; 434 NW2d 220 (1988), lv den 433 Mich 855 (1989). *Linebaugh v Berdish,* 144 Mich App 750, 762; 376 NW2d 400 (1985). In this case, we conclude that (a) the scope of the policy, and the risk that it covers, applies to Piccard because the fire occurred at his business; (b) viewed from the standpoint of the injured person, the "accident" occurred when Deane unexpectedly fell from the roof of Piccard's music store; (c) Deane suffered "bodily injury"; but (d) the insurer has the duty to defend Piccard in this personal injury suit because there are no facts to suggest that Piccard intended to inflict bodily injury on anyone by setting his business on fire and that bodily injury occasioned by Deane was not the direct result of Piccard's conduct.

BRICKLEY and MALLETT, JJ., concurred with
RILEY, J.

LEVIN, J., concurred only in the result.

### APPENDIX A

After an investigation into the cause of the fire
by the Grand Rapids Fire Department, Piccard
admitted to arson investigators that he intention-
ally set fire to his business, and signed the follow-
ing statement reflecting his admission.

I Charles Piccard on 2-16-84 intentionally
poured Brasso on a guitar pad and plugged the
soldering iron in and left it on the pad. Thinking
that a small fire would start in the workshop. I am
solely responsible as I did this without anyone
else's knowledge or in[ ].

### APPENDIX B

Piccard's depositional testimony is consistent
with an account he restated at his plea heard
before Judge Roman J. Snow, Kent Circuit Court,
for the felony of preparation to burn real property.

*The Defendant:* I was the owner of Town and
Country Music Center and I had gone there to
pick up the receipts for the day, and I had taken
another job and was working elsewhere during the
days, so when I got there, and it was a situation
where just the bills kept piling up and everything
kept getting worse and was just becoming more
and more frustrating to be involved with the mu-
sic store, and I started to do the work that I had to

do that evening and I just—I don't know—gave up, I guess. I looked for a way out, I guess. And I went into the back, into the workshop and was doing some repair work, and I knocked over some flammable cleaning fluid onto a work pad, and I just decided at that moment that it looked like the best way out, so I just plugged in the soldering iron and left it laying on the work pad and I left.

*The Court:* And you set fire to the building?
*The Defendant:* Yes, sir.
*The Court:* And you did this intentionally?
*The Defendant:* Yes, sir.

CAVANAGH, C.J. (*dissenting*). The act of intentionally burning a business, specifically intending to cause property damage, is not an accident and, therefore, it cannot be an "occurrence" for purposes of this insurance contract. The accidental nature of the fireman's fall cannot convert the intentional act of the insured into an "accident." In the plain language of the contract, there is no coverage unless the injury was caused by an "occurrence," and an "occurrence" must be an accident.

I

As we observed in *Allstate Ins Co v Freeman* and *Metropolitan Property & Liability Ins Co v DiCicco,* 432 Mich 656; 443 NW2d 734 (1989), we first determine whether coverage exists.

The policy provides coverage for bodily injury or property damage "caused by an occurrence." In the definition section the policy defines "occurrence":

"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, *which results* in bodily injury or property damage

neither expected nor intended from the standpoint
of the insured. [Emphasis added.]

Thus, for coverage to exist in this instance, the
injuries must have been caused by an occurrence.

II

On remand, the Court of Appeals cited *Collins v
Nationwide Life Ins Co,* 409 Mich 271; 294 NW2d
194 (1980), for the proposition that "if a death
results from the voluntary act of the victim, but
the result is unexpected, unanticipated, and un-
foreseen, it is an accidental death within the
meaning of an accident insurance policy." Unpub-
lished opinion per curiam, decided April 5, 1990
(Docket No. 122173), slip op at 3. But *Collins* is
easily distinguishable from this case. The policy in
*Collins* provided coverage for "accidental bodily
injuries." This language focuses upon the resulting
injury, not on the act that results in injury. In the
present case, the language speaks of "liability
. . . *caused by* an occurrence . . . *which results in*
bodily injury." Accordingly, to trigger liability
coverage, the basis of the injury, the event that
caused the injury, must have been an accident
resulting in bodily injury or property damage
unexpected and unintended by the insured.

The complaint alleges that a fire occurred at the
premises of Town & Country Music Center. It
further alleges that "Thomas B. Deane, Jr., re-
sponded to the alarm to the fire and was injured
during the course of battling the fire." Therefore,
the event which forms the "basis for the injury,"
the event to be classified as an occurrence, is the
fire. The policy defines "occurrence" as "an
accident . . . which results in bodily injury or
property damage neither expected nor intended

from the standpoint of the insured." An accident is
" 'an undesigned contingency, a casualty, a hap-
pening by chance, something out of the usual
course of things, unusual, fortuitous, not antici-
pated and not naturally to be expected.' " *Free-
man, supra* at 670. This fire was not an "accident."
The insured admitted this. He intended to set the
fire and intended to burn the contents of the
premises. It cannot be said that the fire was " 'an
undesigned contingency, a casualty, a happening
by chance, something out of the usual course of
things, unusual, fortuitous, not anticipated, and
not naturally to be expected.' " *Id.* Therefore, this
bodily injury was not caused by an occurrence and
coverage is precluded. Defining the fireman's fall
as "accidental" cannot convert the fire, the basis of
the injury, into an "accident."

I would hold that where a direct risk of harm is
intentionally created, and property damage or per-
sonal injury results, there is no liability coverage
even if the specific result was unintended. It is
irrelevant that the character of the harm that
actually results is different from the character of
the harm intended by the insured. *Freeman, supra*
at 718. The insured set out intending to cause
property damage, his act was not an accident, and
the bodily injury was, therefore, not *caused by* an
occurrence.

This interpretation also comports with the differ-
ent nature of the policy in question, as compared
to the policy in *Collins.* The policy in *Collins* was
an accident policy, intended to insure the injured
party against unexpected injury. Here, we are
interpreting a liability policy, and the Court
should examine the nature of the insured's actions
because it is the function of the policy to provide
coverage for liability resulting from negligent acts
of the insured.

III

Justice Riley has concluded that there was an occurrence because an accident occurred when the fireman fell from the roof. *Ante,* pp 546-547. She supports her theory by reference to this Court's opinion in *Allstate, supra:*

> Accordingly, we find that ascertaining the insured's "intent" *may* determine whether the insured's actions constituted an "accident," but it does not necessarily follow that an insured must act unintentionally for an act to be an "occurrence." [*Id.* at 670. Emphasis added.]

I agree that the insured is not required to act unintentionally for the act to be an occurrence;[1] however, I find the first portion of the quoted sentence enlightening. Examining the insured's intent *may* determine whether the actions constitute an "accident." A hypothetical example may help to clarify what I believe to be the substance of the quoted language. Suppose the fire had been started by a faulty electric cord on the insured's coffeemaker. Examining the insured's act for "intent," there is no doubt that he purposely plugged in the coffeemaker and turned on the switch. In that sense he acted intentionally. The fire remains an accident and the act constitutes an occurrence, however, because at the time of the insured's purposeful act he had no intent to cause harm. The act of plugging in the coffeepot is not a sufficiently direct cause of the harm, and the fire in this example is an accident. Mr. Piccard, on the other hand, acted intentionally with the intent to cause property damage and, indirectly, any poten-

---

[1] Almost every event, after all, can be traced back along a line of but-for causation to *some* intentional act, ultimately, constructing the building or buying the property.

tial resulting personal injury; his actions were the direct cause of the condition that resulted in personal injury. His actions cannot constitute an occurrence.

In the motion for summary disposition under MCR 2.116(C)(10), Frankenmuth contended that there was no genuine issue regarding any material fact. I agree. Neither party contends that Mr. Piccard did not intend to set fire to his music store. I would reverse the decision of the Court of Appeals and direct that summary disposition be entered in favor of the insurer, Frankenmuth Mutual Insurance Company.

BOYLE and GRIFFIN, JJ., concurred with CAVANAGH, C.J.