AETNA CASUALTY AND SURETY
CO., Plaintiffs,

v.

The DOW CHEMICAL
CO., Defendants.

No. 93–73601.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 12, 1999.

OPINION AND ORDER DENYING
THE MOTIONS FILED BY FIRE-
MAN'S FUND, ZURICH, AND
CENTURY FOR RECONSIDERA-
TION OF THE COURT'S OPINION
AND ORDER GRANTING IN PART
AND DENYING IN PART DOW'S
MOTION FOR SUMMARY JUDG-
MENT REGARDING THE CON-
DUCT–BASED EXCLUSIONS IN
DOW'S PRE–1985 POLICIES.

EDMUNDS, District Judge.

This matter came before the Court on the motions for reconsideration filed by Fireman's Fund Insurance Company, Century Indemnity Company, and Zurich General Accident and Liability Insurance

Company. Fireman's Fund, Zurich, and Century seek reconsideration of the Court's November 10, 1998 Opinion and Order Granting in Part and Denying in Part Dow's Motion for Summary Judgment Regarding the Conduct–Based Exclusions in Dow's Pre–1985 Policies [the "November 10 Opinion"]. In the November 10 Opinion, the Court granted in part Dow's motion for summary judgment, holding that Dow met its burden of proving that it did not expect or intend damage at Brookhurst, Dalton, Cliffs–Dow, Midland, PPI, Silresim, and, with respect to the Hartley & Hartley site for the period September 1969 and earlier. With respect to Conalco and to Hartley & Hartley post-September 1969, the Court denied Dow's motion for summary judgment. Subsequently, Dow withdrew on the record its claim at the Silresim site and withdrew its claims for indemnity at the Hartley & Hartley site. Thus, the Court does not consider any arguments regarding the Silresim or Hartley & Hartley sites. As explained below, the motions for reconsideration are DENIED.

## I. Standard of Review

Pursuant to Rule 7.1(g) of the Local Rules for the Eastern District of Michigan, a motion for reconsideration should be granted if the movant demonstrates that the court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the court, expressly or by reasonable implication, shall not be granted. In this case, the motions for reconsideration merely present the same issues already ruled upon by the Court.

## II. Analysis

### A. Expectation and Intent Cannot be Imputed

Fireman's Fund argues again that the Court should impute the expectation of one Dow employee to another. Fireman's

Fund claims that expectation is mere knowledge and that because knowledge is imputed under *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 214–15, 476 N.W.2d 392, 400–01 (1991), expectation should be imputed as well. Thus, Fireman's Fund reasons, evidence showing that one Dow employee knew a certain chemical was toxic and water soluble coupled with evidence that another Dow employee knew the method of disposal used at a site would lead to groundwater contamination constitutes evidence that Dow expected or intended property damage at each of the Final Sites.

■ This argument rests on the faulty premise that expectation is mere knowledge which may be imputed from one corporate employee to another. The Court has already ruled otherwise. In the Court's September 2, 1998 Opinion and Order Denying London Insurers' Motion for Summary Judgment Regarding the "Expected or Intended" Clause With Respect to the Conalco Site [the "Conalco Opinion"], the Court held that while knowledge may be imputed for certain purposes, subjective intent may not be imputed in the context of an "expected or intended" clause in an insurance policy because the purpose of the intent provision is to ensure that the relevant expectation and intent is that of the corporate entity and not that of some individual employee. 28 F.Supp.2d 421, 431 (E.D.Mich. 1998). In the Court's October 29, 1998 Opinion and Order Denying London Insurers' Motion for Reconsideration and Clarifying September 2, 1998 Opinion, the Court reaffirmed this holding, noting that this precise issue was addressed in *Hoechst Celanese Corp. v. National Union Fire Ins. Co.*, 1994 WL 721786 (Del.Super. Apr.22, 1994) (while knowledge of lower level employees may be imputed to a corporation, expectation and intent should not be imputed). *Id.* at *17. The Court also explained that this holding is consistent with the Michigan Supreme Court's ruling in *Arco Indus. Corp. v. American Motorists Ins. Co.*, 448

Mich. 395, 531 N.W.2d 168 (1995). In *Arco,* the plant chemist testified that he knew theoretically that VOCs should not be discharged into an unlined lagoon. However, he did not know that Arco was discharging VOCs into the lagoon and there was no evidence that the Arco employees who released the VOCs expected or intended to damage the environment.

> *Although it is tempting to infer intention or an awareness* of the dangers of VOCs, there simply was no testimony that any of Arco's employees released VOCs into the environment with the intention to harm the environment. Furthermore, there was no testimony that anyone should have expected that harm would result from their actions. *We will not make such inferential leaps.*

448 Mich. at 415, 531 N.W.2d at 177 (emphasis added). *Id.* \*17–18.

### B. Test for Determining Whether Damage was Expected/Intended is Different Than Test Under Loss–in–Progress Doctrine; Burden of Proof

Fireman's Fund, Century, and Zurich contend that in its November 10 Opinion, the Court improperly relied on the September 17, 1998 Opinion and Order Granting in Part and Denying in Part Dow's Motion for Summary Judgment Regarding the "Loss–in–Progress" Doctrine. The Insurers contend that the Court applied the loss-in-progress doctrine to its interpretation of the "expected or intended" clause and that the Court improperly placed the burden of proof on the Insurers, instead of on Dow.

 The Insurers misinterpret the Court's November 10 Opinion. In that Opinion, the Court carefully explained that although the legal test under the "loss-in-progress" doctrine is distinct from the legal interpretation of the "expected or in-

tended" clause and although the burden of proof regarding expectation and intent must be borne by Dow, in this case the factual evidence relevant to the loss in progress analysis and the expected/intended analysis is the very same evidence. The loss-in-progress doctrine precludes insurance coverage where the insured is subjectively aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for. Under the "expected or intended" clause, insurance coverage is precluded where the insured subjectively expected or intended the damage for which it now seeks coverage at the time the insured engaged in the culpable conduct. The Court explained, "The September 17 Opinion . . . focused on the very issue that faces the Court here—whether Dow had the requisite subjective awareness."

Fireman's Fund, Century, and Zurich also argue that the Court improperly placed the burden of proof on the Insurers instead of on Dow. The Insurers argue that Dow did not submit any affidavits denying that it expected or intended property damage at the Final Sites and that instead Dow focused on rebutting the Insurers' evidence allegedly indicating that Dow expected or intended damage.[1]

In the September 2 Conalco Opinion, the Court held that the insured, Dow, had the burden of proving that it did not expect or intend damage because Dow had greater access to evidence regarding its own expectations. 28 F.Supp.2d at 427. At the same time, the Court understood that it placed Dow in the difficult position of having to prove a negative, and that in many circumstances resolution of the issue still depends on the persuasiveness of any affirmative proof adduced by the insurers that the insured expected or intended damage. *Id.* at 426. Courts have recognized that "in

---

1. Century noted in its brief that "defense counsel expected Dow would never be able to meet its burden because discovery had revealed the very people Dow would have to prove lacked the requisite 'subjective' mental state under the Court's rulings were either dead or did not remember." Century's Motion for Reconsideration fn. 6.

most complex environmental-contamination cases, the burden-of-proof issue will be of limited importance. Most likely, facts supporting or negating an 'expected/intended' finding will be elicited during discovery and will illuminate the issue for a trier of fact. We anticipate that the rare case will be one in which the ultimate resolution of this issue depends on which party bears the burden of proof." *Carter–Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 333, 712 A.2d 1116, 1127 (1998).

■ First, in this case the resolution of the issue does not depend on which party bore the burden of proof. In the summary judgment context, it is the burden of persuasion, not the burden of production, that is critical. A court must examine the weight and sufficiency of all of the evidence, without regard to who produced it, to determine whether the burden of proof was met. As explained in the November 10 Opinion, after examining all of the evidence presented, the Court found that there was no genuine issue of material fact regarding Dow's expectation or intent at Brookhurst, Dalton, Cliffs–Dow, Midland, PPI, and, with respect to the Hartley & Hartley site for the period September 1969 and earlier.

Secondly, the Insurers simply ignore the fact that Dow presented a great deal of evidence regarding its intent at the various sites. For example, at the Brookhurst site, Dow presented evidence that its personnel believed that chlorinated solvents evaporated before reaching the ground sump. Dow's Combined Motion for Summary Judgment Regarding the Conduct–Based Exclusions, Exhibit 30, Brannan Dep. at 455–5 and Exhibit 31, Witt Dep. at 155. At the Dalton site, personnel did not know that the ponds were causing groundwater contamination before the ponds were closed. Dow's Combined Motion, Exhibit 35, McCormick Dep. at 95; Exhibit 36, Wanamaker Dep at 196; Exhibit 37, Szollosi Dep. at 70–71. With regard to the Cliffs–Dow site, Dow presented evidence that its personnel believed that the phenols

it discharged at the site would oxidize or biodegrade. Dow's Combined Motion, Exhibit 47, Minear Report at 25; Exhibit 48, 1959 Dow report at 7. Similarly, at the Midland site, Dow believed that solvents would evaporate or be filtered and that hydrochloric acid would spend itself or neutralize itself. Dow's Combined Motion, Exhibit 30, Brannan Dep. at 455–57; Exhibit 32, Maddin Dep at 417; Exhibit 65, Leininger Dep. at 30–31. Finally at the PPI Brooklawn and Scenic Highway sites, Dow believed that the chlorinated wastes it sent to the site were insoluble and thus could not contaminate surface water or groundwater. Dow's Combined Motion, Exhibit 67, Simmons Dep. at 282; Exhibit 70, Moolenaar Dep. at 108–09; Exhibit 71, Bone Dep. at 28, 163, 169–70, 195; Exhibit 72, Robertson Dep. at 128–29, 484.

■ Finally, the Insurers also argue that the Court made credibility determinations that should have been left to the jury. To the contrary, the Court did not find the Insurers' evidence incredible. Instead, the Court held that the Insurers' alleged evidence regarding Dow's expectation and intent was not relevant. Evidence of Dow's intentional acts, Dow's general knowledge of the risks posed by chemicals, Dow's knowledge at other sites, and industry knowledge, without evidence Dow received and understood the information, is simply not relevant to a determination of whether Dow subjectively expected or intended property damage at the Final Sites. November 10 Opinion at 8–9; Loss–in–Progress Opinion at 3–11.

In sum, Dow met its burden of proving that it did not expect or intend property damage at Brookhurst, Dalton, Cliffs–Dow, Midland, and PPI.

### C. Property Damage at Cliffs–Dow

Century asks the Court to determine whether the remediation for which Dow seeks insurance coverage at Cliffs–Dow is only for remediation of soil contamination or whether Dow seeks coverage for

groundwater remediation as well. Century contends that there is no groundwater contamination for which there could be coverage at Cliffs–Dow. This issue is not properly before the Court, as Century has brought no motion for relief but requested this ruling in a responsive pleading. Even so, the pleadings in this case indicate that Dow seeks insurance coverage for claims including groundwater contamination at Cliffs–Dow. Dow seeks coverage for two claims at Cliffs–Dow: (1) an October 31, 1991 State of Michigan MDNR PRP letter to Dow; and (2) a February 1992 private lawsuit, the Presque Isle suit. Remedial investigation was done at the site. The investigation was completed in 1993, and groundwater contamination was confirmed. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 10 F.Supp.2d 800, 822–23 (E.D.Mich.1998); Exhibit 21 to Dow's Owned Property Brief (1991 PRP letter to Dow indicating that groundwater contamination has been documented at Cliffs–Dow).

█ Century and Zurich contend that coverage is precluded for any soil contamination at the Cliffs–Dow site because Dow expected or intended such damage due to the fact that Dow intentionally disposed of tar at the site. This argument mistakenly focuses on the intentional nature of Dow's acts. As the Court has repeatedly explained, Michigan law focuses on whether the damage was intentional, not whether the act was intentional. November 10 Opinion at 3; Conalco Opinion, September 2, 1998 at 10–11; *Aetna Cas. & Sur. Co. v. Dow Chem. Co.,* 10 F.Supp.2d 771, 798 (E.D.Mich.1998). "[I]t is possible to have a cause of action where the intentional conduct will result in unintended and unexpected injury thus constituting an 'accident' under the policy language." *Frankenmuth Ins. v. Piccard,* 440 Mich. 539, 548–49, 489 N.W.2d 422 (1992).

The Insurers also argue that summary judgment should have been denied as to the Cliffs–Dow site, as it was for the Conalco site where Dow disposed of thorium. The evidence regarding the Conalco site is different from the evidence regarding the Cliffs–Dow site. At Conalco, there is a genuine issue of material fact regarding whether Dow expected to contaminate the soil when it disposed of thorium at the site. The Court explained as follows:

> Lawrence Silverstein, a Radiation Safety Officer employed by Dow from 1955–1960, testified in his deposition that as early as 1956 he would have known that thorium dumped directly onto the soil would contaminate the top soil. Traveler's Exhibit 11, Silverstein Dep. 187–88.
>
> However, Silverstein's deposition testimony is equivocal on this point. Dow points to the knowledge of the scientific community at the time of the thorium disposal and argues that because the thorium waste had the same low level of radioactivity as naturally-occurring thorium, Dow did not expect disposal directly on the ground to cause any environmental damage. Silverstein testified, "It is hard to see how thorium could hurt the environment when it is already ubiquitous." Dow's Exhibit 52 to its Combined Motion for Summary Judgment Regarding the Conduct–Based Exclusions and Loss in Progress, Silverstein Dep. p. 184.

There is no such conflicting evidence regarding Dow's subjective expectation/intent at the Cliffs–Dow site.

### III. Conclusion

For reasons stated above, the motions for reconsideration filed by Fireman's Fund Insurance Company, Century Indemnity Company, and Zurich General Accident and Liability Insurance Company are DENIED.