D.W.H., a minor, Through Lorena MITCHELL, her duly appointed guardian ad litem, Petitioner, Appellant (C9–92–1251), Respondent (C8–92–1306),

v.

Sadie STEELE, et al., Defendants,

D.H., a minor, Petitioner, Appellant (C8–92–1306),

and

Minnesota Joint Underwriting Association, Intervenor, Respondent.

Nos. C9–92–1251, C8–92–1306.

Supreme Court of Minnesota.

March 11, 1994.

...

Meaghan E. Harper, Harper and Harper, Eagan, for D.W.H.

Charles Joseph Lloyd, Lindquist & Vennum, Minneapolis, for D.H.

Jeanne H. Unger, Martha M. Simonett, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Regina Chu, Minneapolis, for defendants.

KEITH, Chief Justice.

We entertain review to consider the narrow question of whether the Minnesota Joint Underwriting Association is obligated by statute or contract to defend or indemnify a minor foster care resident for the plaintiff D.W.H.'s claims of intentional physical and sexual abuse. We affirm.

On June 1, 1987, 3–year–old D.W.H. was placed in the foster home owned and operated by Sadie Steele, a licensed foster care provider. During the ensuing year, she was repeatedly sexually assaulted by an 11–year–old resident of the foster home, defendant D.H. In March 1989, a delinquency petition was filed in the Hennepin County Juvenile Court against D.H., alleging three felony counts of criminal sexual conduct in connection with the assaults against D.W.H. D.H. entered a plea of guilty to one count and was committed, at age 14, to the Sex Offender Program at the Hennepin County Home School.

Plaintiff, through her guardian ad litem, commenced this civil action against Steele and alleged in her complaint as amended that there was negligent supervision in the foster home, that Steele herself intentionally physically and sexually abused D.W.H., and that Steele violated Minn.Stat. § 626.556 in failing to report known sexual abuse. D.W.H. again amended her complaint, commencing suit against D.H., alleging his intentional sexual

abuse. The Minnesota Joint Underwriting Association, the insurer under a Foster Parents Liability Policy, retained separate counsel to defend Steele [1] and preserved its coverage defenses pursuant to a reservation of rights. It sought and was granted intervention and then initiated this declaratory judgment action to confirm its position that it had no duty to defend or indemnify Steele for the plaintiff's claims of intentional abuse or for violation of Minn.Stat. § 626.556 and that it had no duty to defend or indemnify D.H. In his answer and counterclaim, D.H. sought a judicial declaration that the association was obligated by Minn.Stat. § 245.814 to both defend and indemnify him.

On cross-motions for summary judgment, the trial court determined that the MJUA was not obligated to defend or indemnify the defendants Steele and D.H. for their alleged intentional acts. Judgment was entered in favor of the intervenor-insurer and the plaintiff D.W.H. and defendant D.H. appealed. The court of appeals consolidated the appeals and affirmed the judgment. *D.W.H. Through Mitchell v. Steele*, 494 N.W.2d 513 (Minn.App.1993).

■ While both the plaintiff D.W.H. and the defendant D.H. petitioned for further review, the plaintiff subsequently settled her claims against defendant Steele and dismissed her action. Thus, the only issue for our consideration is whether the Minnesota Joint Underwriting Association was obligated to defend or indemnify defendant D.H., a foster care resident, for the plaintiff D.W.H.'s claims of intentional physical and sexual abuse. Simply stated, D.H. maintains that the "association is obligated, as a matter of law, by Minn.Stat. § 245.814 to indemnify him." We disagree.

Enacted in 1977, Minn.Stat. § 245.814 is entitled "Liability Insurance for Licensed [Foster Home] Providers," and states its purpose as follows:

> This coverage is extended as a benefit to foster home providers to encourage care of persons who need out-of-home care.
> * * *

Minn.Stat. § 245.814, subd. 3. The legislature directed the Commissioner of Human Services to "purchase and provide insurance to individuals licensed as foster home providers to cover their liability for:

(1) injuries or property damage caused or sustained by persons in 'foster care in their home; and

(2) actions arising out of alienation of affections sustained by the natural parents of a foster child or natural parents or children of a foster adult."

Minn.Stat. § 245.814, subd. 1. The plain language of this statute contemplates the provision of coverage for the foster home provider alone in the event of the provider's liability for injuries or property damage occasioned by the operation of a facility as a foster home. The statute makes no provision for coverage for potential liability of foster care residents.

D.H. urges this court to import the language of Minn.Stat. § 245.814, subd. 2 [2] into the general coverage provision of subdivision 1. He argues that by specifically excepting from coverage "damage caused intentionally by a person over 12 years of age," the legislature has evidenced its intention to provide coverage in the event the injury or damage was intentionally caused by a person *under* the age of 12. In other words, he seeks, because of his age and the nature of his act, coverage derivative from that of the foster care provider. The argument is without per-

---

**1.** The MJUA accepted defense, under a reservation of rights, of the claims against Steele because it acknowledged that the claim of negligent supervision was covered under its policy.

**2.** Minn.Stat. § 245.814, subd. 2 provides as follows:

> **Application of Coverage.** Coverage shall apply to all foster homes licensed by the department of human services, licensed by a federally recognized tribal government, or established by the juvenile court and certified by the com-

missioner of corrections pursuant to section 260.185, subdivision 1, clause (c)(5), to the extent that the liability is not covered by the provisions of the standard homeowner's or automobile insurance policy. The insurance shall not cover property owned by the individual foster home provider, damage caused intentionally by a person over 12 years of age, or property damage arising out of business pursuits or the operation of any vehicle, machinery, or equipment.

suasion, however, and ignores the designated purpose of section 245.814 in providing liability insurance for foster home providers alone. Moreover, the limitation language of subdivision 2 refers only to "damage" not injury and must be read as applicable only to the "property damage" liability of the foster care provider.

■ If no coverage is afforded by statute, the question remains whether it is afforded under the contract of insurance issued by the MJUA[3] to Steele. In its motion to intervene, MJUA acknowledged that defendant D.H. is an "insured"[4] under the Steele policy, but asserted that the policy excludes coverage for personal or bodily injuries arising out of the "willful violation of a penal statute," "arising out of or resulting from the actual, alleged or threatened sexual molestation of a minor by * * * any insured" or arising out of a "criminal or malicious act." The policy further specifically states that:

> MJUA shall have no duty to defend any claim or suit involving sexual molestation of a minor, regardless of the circumstances involved in the claim or suit, even though the allegations may be groundless, false or fraudulent.

Although we have not had the occasion to consider the validity of the intentional act exclusions contained in the MJUA policy, we have held them valid in other contexts and are persuaded that the public policy favoring such exclusions is equally applicable here. *See State Farm Fire & Cas. Co. v. Williams,* 355 N.W.2d 421 (Minn.1984); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn. 1982); and *Smith v. Senst,* 313 N.W.2d 202 (Minn.1981). That the legislature assumed that the statutorily directed policy would mirror standard policy language is demon-

strated by Minn.Stat. § 62I.06 which provides in pertinent part as follows:

> The policies and contracts of coverage issued pursuant to this chapter shall contain the usual and customary provisions of similar insurance policies issued by private insurance companies. * * *

Minn.Stat. § 62I.06, subd. 1. Finally, we reject D.H.'s claim that, because he was but 11 or 12 years of age when the alleged assaults occurred, he could not form the requisite intent to injure and should be covered under the policy. *See American Family Mut. Ins. Co. v. Peterson,* 405 N.W.2d 418 (Minn.1987) (in cases involving nonconsensual sexual contact, the court infers intent to harm as a matter of law and without regard to the insured's subjective view).

The summary judgment entered in favor of the Minnesota Joint Underwriting Association is affirmed in all respects.

Affirmed.

Justice SIMONETT took no part in the consideration or decision of this case.

---

3. The Minnesota Joint Underwriting Association was legislatively created in 1986:
   > to provide insurance coverage to any person or entity unable to obtain insurance through ordinary methods if the insurance is required by statute, ordinance, or otherwise required by law, or is necessary to earn a livelihood or conduct a business and serves a public purpose.

   Minn.Stat. § 62I.02, subd. 1. "Foster parents" and "foster homes" are specifically included in

the enumeration of those individuals or entities to whom the association is authorized to provide coverage. *Id.* Nothing in this statute authorizes the MJUA to provide coverage to foster care residents.

4. The Foster Parents' Liability Policy defines "insured" as "a foster parent and any relative or spouse of the foster parent who resides in the same household, and any other person under the age of 21 in the care of the foster parent."