FIRE INSURANCE EXCHANGE v DIEHL

Docket No. 147298. Submitted March 9, 1994, at Lansing. Decided
July 5, 1994, at 9:20 A.M. Leave to appeal sought.

Fire Insurance Exchange, the homeowner's insurer of Clifford
and Michelle Buckmaster and their minor son, brought an
action in the Oakland Circuit Court against Mary A. Diehl and
the Buckmasters, seeking a declaration that Fire Insurance
Exchange had no duty to defend or provide liability coverage to
the Buckmasters in a personal injury action by Diehl, individu-
ally and as next friend of her minor daughter, relating to two
instances in which the Buckmaster boy, at age seven to nine
years, asked the Diehl girl, at age four to six years, to perform
a sexual act on him. The court, John N. O'Brien, J., granted
summary disposition for Fire Insurance Exchange, ruling that,
under a provision in the insurance policy excluding coverage
for bodily injury or property damage resulting from an occur-
rence caused by an intentional act of an insured person where
the results are reasonably foreseeable, there was no coverage
for the Buckmasters. In making its ruling, the court assessed
the foreseeability of bodily injury to the Diehl girl from the
intentional acts of the Buckmaster boy from the standpoint of a
reasonable adult rather than a child of age, ability, intelli-
gence, and experience similar to that of the Buckmaster boy.
Diehl appealed.

The Court of Appeals *held:*

The foreseeability of bodily injury to the Diehl girl resulting
from the intentional sexual acts of the Buckmaster boy should
have been determined by the trial court from the perspective of
a child of age, ability, intelligence, and experience similar to
that of the Buckmaster boy. When so assessed under the record
in this case, there is no genuine issue of material fact that the
Buckmaster boy did not foresee bodily injury to the Diehl girl.
Accordingly, the intentional-acts exclusion of the Fire Insur-

REFERENCES

Am Jur 2d, Insurance § 708.

Construction and application of provision of liability insurance
policy expressly excluding injuries intended or expected by in-
sured. 31 ALR4th 957.

ance Exchange policy is inapplicable. Summary disposition for Fire Insurance Exchange must be reversed, and summary disposition for Diehl must be granted on remand.

Reversed and remanded.

INSURANCE — HOMEOWNER'S INSURANCE — INTENTIONAL-ACTS EXCLU-SION — CHILDREN.

For purposes of a homeowner's insurance policy that excludes liability coverage for reasonably foreseeable bodily injury resulting from an occurrence caused by an intentional act of an insured person, the foreseeability of bodily injury to a child caused by an intentional sexual act by an insured child is to be determined from the standpoint of a child of age, ability, intelligence, and experience similar to that of the insured child.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt* and *Christine M. Hewlett*), for Fire Insurance Exchange.

*Campbell, Keenan, Harry, Cooney & Karlstrom* (by *C. Daniel Harry*), for Mary A. Diehl.

Before: HOOD, P.J., and NEFF and T. E. JACKSON,* JJ.

NEFF, J. This appeal involves an action for declaratory judgment brought by plaintiff, Fire Insurance Exchange (the insurer), to determine whether it had a duty to defend or provide coverage to its insureds, Clifford Buckmaster, Michelle Buckmaster, and their son (hereinafter referred to as the boy), in an underlying civil action brought by defendant, Mary Ann Diehl, individually and as next friend of her minor daughter. (The minor daughter hereinafter will be referred to as the girl). Diehl brought a counterclaim against the insurer, alleging breach of a third-party beneficiary contract and requesting imposition of sanctions and reasonable attorney fees. Diehl appeals as of right from an order of the circuit court

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granting summary disposition in favor of the insurer. The Buckmasters are not parties to this appeal. We reverse and remand for entry of an order granting summary disposition in favor of Diehl.

I

In the underlying case against the Buckmasters, Diehl sought to recover for physical insult, bodily injury, and damages suffered by the girl as a result of two alleged sexual assaults committed by the boy. The alleged assaults involved the boy coercing or otherwise forcing the girl to engage in "oral sex."

The first alleged assault occurred in the summer of 1988 or the summer of 1989. However, the deposition testimony of Mary Ann Diehl suggests the possibility that the first assault may have occurred before or during June 1988. The girl began seeing a therapist in June 1988 because of behavioral changes. The second alleged assault occurred around July 1990. At the time of the first alleged assault, the boy was either seven or eight years old, and the girl was four or five years old. At the time of the second alleged assault, the boy was nine years old, and the girl was six years old.

The underlying complaint also alleges a count of negligent supervision against Michelle and Clifford Buckmaster based on their failure to prevent the alleged acts by not exercising reasonable parental authority over the boy.

The insurer filed a declaratory action, seeking a judgment that it had no duty to provide a defense or coverage to the Buckmasters for any of the allegations in the underlying complaint. The insurer claimed, inter alia, that the boy's conduct constituted intentional acts that are specifically

excluded under the language of the homeowner's policy issued to the Buckmasters.

After discovery was completed in this case, the trial court granted the insurer's motion for summary disposition, which was brought pursuant to MCR 2.116(C)(10) (no genuine issue concerning any material fact). The trial court focused on the policy language and on whether the alleged injuries to the girl were reasonably foreseeable. It then applied an objective reasonable man standard in granting summary disposition in the insurer's favor. The court declined to apply a reasonable child standard, finding that to do so would "invite an analysis in each case of a complained-of actor's maturity or intellectual ability or that person's subjective circumstances."

II

The policy provides for personal liability coverage for an occurrence:

> We shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury or property damages covered by this policy.
> At our expense we shall defend an insured against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper.

An occurrence is defined as: "[A] sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured."

The policy in effect from July 1987 to July 1988 also contains an intentional-acts exclusion, which provides:

We do not cover bodily injury or property damage:

*    *    *

3. Either;

a. caused intentionally by or at the direction of an insured, or

b. resulting from an occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable.

The policies in effect after July 1988 contain an endorsement that changes the phrase "an insured person" in exclusion 3b to "any insured."

There is no dispute between the parties that the boy's acts were intentional. The parties do, however, dispute whether the boy's acts constitute occurrences. In arguing that there was no occurrence, the insurer focuses only on whether the bodily injury was expected or intended by the insured. For there to be an occurrence, the bodily injury must be "neither expected nor intended by the insured." As will be discussed further, on the record before the trial court and before this Court, there is no question that the boy neither expected nor intended the claimed bodily injury to the girl even though his sexual acts were clearly intentional. Accordingly, the boy's acts constitute occurrences under the policy, and the insurer cannot avoid its duties to defend and provide coverage on the basis of this argument. If the insurer is to avoid these duties, it must be able to do so on the basis of the language of the intentional-acts exclusion in the policy.

III

It is clear from the boy's deposition testimony that, although the sexual acts were clearly intentional, the boy did not intend to harm the girl and

did not understand that his sexual acts would or could cause harm to her. His testimony indicates an understanding that one would be injured if shot with a gun:

> *Q.* Have you ever seen [movies or television shows] when they pull out a gun?
> *A.* Uh-huh.
> *Q.* Did you ever see anybody get shot with that gun?
> *A.* Yes.
> *Q.* When somebody shoots that gun, what do you think happens to the person that gets hit with the gun?
> *A.* They either get hurt bad or die.
> *Q.* Why is that?
> *A.* Because the gun is very powerful.
> *Q.* What comes out of the gun?
> *A.* A bullet.
> *Q.* And when somebody gets hit with that bullet, what do you see happen?
> *A.* Blood.
> *Q.* Is that how you know somebody gets hurt?
> *A.* Yes.

Thus, it is clear that the boy could reasonably foresee the harm caused by such physical violence.

However, his testimony indicates that he has no understanding whatsoever of the potential for harm from sexual acts by either himself or others. The boy admitted that he had seen "bad movies" of people "mating" on television:

> *Q.* I think you told us a minute ago that you've seen people mating on television, right?
> *A.* Yes.
> *Q.* Did it look like they were hurting each other?
> *A.* No.
> *Q.* Did it look like they were having fun?

*A.* No.

*Q.* Did you ever think in watching that that they were hurting each other?

*A.* No.

The boy also admitted asking another young boy to perform fellatio upon him before the first alleged act upon the girl, but testified that he did not know that he was hurting the boy:

*Q.* Do you remember asking [another boy] to suck your penis?

*A.* Yes.

*Q.* Did you do that?

*A.* Yes.

*Q.* Did he do that?

*A.* Yes.

*Q.* Now why did you ask [him] to do that?

*A.* I don't know.

\* \* \*

*Q.* Did you ever have anybody else suck your penis?

*A.* Not before that.

*Q.* That's the first time.

*A.* Uh-huh.

\* \* \*

*Q.* Did your mom talk to you after she found out what you and [the other boy] did?

*A.* Yes.

*Q.* Did she ever tell you, when she talked to you, that you might be hurting [the other boy]?

*A.* No.

*Q.* Did she ever tell you that you might be hurting yourself?

*A.* No.

*Q.* Do you know what I mean when I say hurt somebody in the head versus hurt somebody someplace else on their body?

*A.* Yes.

The boy admitted both of the acts against the girl, but testified that he had no idea he was hurting her:

> *Q.* Do you want to tell us in your own words what happened [in your basement] with the girl?
> *A.* Well, I told her to suck my penis, and she did.
>
> \* \* \*
>
> *Q.* Did you know when you were doing it that you were doing something bad?
> *A.* No.
> *Q.* Did you think you were doing something good?
> *A.* No.
> *Q.* Did you think you were doing something fun?
> *A.* No.
> *Q.* You were just doing it to do it.
> *A.* Yes.
> *Q.* Were you being curious?
> *A.* Yes.
>
> \* \* \*
>
> *Q.* Did you have any idea that you would be hurting the girl?
> *A.* No.
> *Q.* Did you ever mean to hurt the girl?
> *A.* No.
> *Q.* The girl was your friend, wasn't she?
> *A.* Yes.
> *Q.* Did you have any idea that you may be hurting the girl in her head?
> *A.* No.
>
> \* \* \*
>
> *Q.* (*By Mr. Harry:*) Did you ever go up into the girl's closet with her, at her house?
> *A.* Yes.
> *Q.* Did you guys do anything there?
> *A.* Yes.
> *Q.* What did you do?
> *A.* The same thing.

*Q.* What did you guys do in the closet? When you said "the same thing," what same thing?

*A.* She sucked my penis.

\* \* \*

*Q.* Did you mean to hurt the girl in any way then?

*A.* No.

In addition to the boy's deposition testimony, the trial court also had before it a letter from David A. Vore, Ph.D., a clinical psychologist regarding the capability of average 8½- to 9-year-old children to foresee the expected or intended results of sexual acts:

2. In a general sense, children within the 8½ to 9 year age range display limitations in the capacity to develop empathy for and understand the feelings of other individuals. This is largely due to the fact that the average child within this age range is markedly ego centered and experiences difficulty perceiving or responding to the world from any framework other than his/her own perspective.

3. In my opinion, clinically, I would not expect the average child within the 8½ to 9 year age range to have the ability to understand the potential emotional damage which sexual abuse perpetrated upon another minor child might cause the victim in the future.

4. Consequently, while the average child within the 8½ to 9 year age range might well be able to state understanding of the wrongfulness of sexually abusive behavior toward another child and, to some extent, express feelings of guilt regarding such behavior, these statements would more typically reflect concerns in that child regarding possible punishment for their behavior rather than an understanding of the potential damage such behavior might inflict upon the victim in the future.

The letter also addresses the facts of the underlying case and the boy's capabilities in particular:

> 5. School records reviewed by this Examiner pertaining to the boy reflect a history of problems developing and maintaining relationships with peers both within the home and school environments, history of verbal and physical aggressiveness toward peers and younger children, diagnosis of depression/oppositional disorder and qualification for Special Education programming under the Emotionally Impaired (EI) category of the Michigan Special Education Law. . . .
>
> 6. The information presented above provide grounds for serious questioning of the capability of an average child to reasonably foresee the "expected or intended" results of sexually abusive behavior in terms of the potential long term emotional impact upon the victim. In my opinion, given the history suggested in deposition records reviewed by this Examiner, the probability of the boy being capable of foreseeing such results would be clinically expected to be considerably below that of the average child within the 8½ to 9 year age range. More specifically, it would be my clinical opinion that the boy would be very limited in the ability for either cognitive or emotional empathy or understanding of the long term future consequences of the sexually abusive behavior admittedly carried out toward the girl upon the victim.

IV

Diehl argues that, because the bodily injury suffered by the girl as a result of the boy's sexual acts was neither expected nor intended by the boy, the trial court erred in granting summary disposition to the insurer. The insurer argues that the trial court properly granted summary disposition

in its favor because there is no material question of fact that the boy acted intentionally and that the girl's claimed injuries occurred as a natural, foreseeable, expected, and anticipated result of the boy's intentional acts.

As a general rule, an insurer may avoid liability for an "expected" or "intended" injury if the injury suffered by the victim is the natural, foreseeable, expected, and anticipatory result of an intentional act by the insured. *Frankenmuth Mutual Ins Co v Piccard,* 440 Mich 539, 550-551; 489 NW2d 422 (1992); *Allstate Ins Co v Freeman,* 432 Mich 656, 687; 443 NW2d 734 (1989).

This Court has held that engaging in sexual contact with a child is an intentional act and that the intent to injure or harm can be inferred as a matter of law from the sexual contact itself. *State Mutual Ins Co v Russell,* 185 Mich App 521, 526-527; 462 NW2d 785 (1990); *Auto-Owners Ins Co v Gardipey,* 173 Mich App 711, 714-715; 434 NW2d 220 (1989); *Linebaugh v Berdish,* 144 Mich App 750, 762-763; 376 NW2d 400 (1985). The insurer urges this Court to follow these cases and find that, in this case, the intent to injure may be inferred as a matter of law. Were we dealing with the sexual assault of a child by a competent adult, there would be no question that intent to injure would be inferred as a matter of law. However, because the perpetrator of the sexual assault was a child, we find that such an inference is improper.

We have found no Michigan cases construing the exact language of the exclusionary clause at issue here. However, if the insured were an adult, the exclusionary clause would require us to apply an objective standard in determining whether the results of an intentional act are "reasonably foreseeable."

We are faced with the task of determining what

standard should be applied to determine whether bodily injury is reasonably foreseeable where the perpetrator of a sexual assault upon a child is another child. The trial court found as a matter of law that an objective reasonable man standard should be applied. We find that it is untenable that the trial court applied an objective adult standard to a child between seven and nine years old. A different standard must be applied in a case where the insured is a young child who has engaged in sexual activity with another child.

Diehl argues persuasively that the extension of an adult objective standard of foreseeability to the boy's acts is without authority in Michigan law and is inconsistent with the policy of requiring different objective standards of conduct between children and adults within the context of negligence actions. The insurer argues that, because this case involves an intentional act and not negligence, the differing standards applicable to adults and children in the negligence context should not be applied here. We disagree with the insurer and find that the standard to be applied in this case is that of a reasonable child of like age, ability, intelligence, and experience under like circumstances. In applying standards of behavior to a child in a noncriminal context, the child's age and developmental level must be taken into account.

Children under seven years of age are conclusively incapable of negligence. *Burhans v Witbeck,* 375 Mich 253; 134 NW2d 225 (1965); *Queen Ins Co v Hammond,* 374 Mich 655; 132 NW2d 792 (1965); *Baker v Alt,* 374 Mich 492; 132 NW2d 614 (1965). This conclusive presumption does not apply to children seven years of age or older. Rather, in the context of negligence actions, the capability of children seven years of age or older is a question of fact for the jury, which is to determine the issue

on the basis of whether the child had conducted himself as a child of his age, ability, intelligence and experience would reasonably have been expected to do under like circumstances. [*Burhans, supra,* p 255.]

We are not convinced that this case is the proper vehicle to even consider adopting a bright-line test for children above or below a certain age. However, we are convinced that a mixed objective/ subjective reasonable child standard similar to the standard applied in the negligence context must be applied in cases involving intentional acts by children to determine whether the results of those acts were reasonably foreseeable.

The task of applying this reasonable child standard to the facts presented in a given case should generally be left to the trier of fact. However, on the basis of the record presented to the trial court in this case, we find that Diehl, not the insurer, is entitled to summary disposition.

Applying the reasonable child standard we announce today strictly to the record that was presented to the trial court in this case, we find that there is no genuine issue of material fact that an average seven- to nine-year-old child could not reasonably foresee that his or her sexual acts could cause harm to another child. Had there been expert testimony to the contrary, summary disposition would not be appropriate.[1] However, there is nothing on the record that was presented to the trial court to indicate that an average seven- to nine-year-old child could appreciate the potential for harm to another child as a result of the first child's sexual acts.

In addition, there is nothing on the record that

[1] We note that discovery was closed at the time of the hearing and ruling on the insured's motion for summary disposition.

was presented to the trial court that would indicate that the boy's capabilities were above that of an average child of his age, ability, intelligence, and experience. Indeed, if anything, the boy's capabilities would fall well below that of the average seven- to nine-year-old child. There is no question that, on this record, the boy could not reasonably foresee that his sexual acts could cause any harm to the girl. Under these circumstances, the intentional-acts exclusion is inapplicable as a matter of law. Accordingly, we reverse the order granting summary disposition in favor of the insurer and remand this case to the trial court for entry of an order granting summary disposition in favor of Diehl in this declaratory action.

V

In light of our resolution of this case, we need not address Diehl's remaining arguments.

VI

At oral argument before this Court, the insurer waived its argument that Diehl lacks standing in this case.

Reversed and remanded. We do not retain jurisdiction.