FIRE INSURANCE EXCHANGE v DIEHL

Docket No. 100985. Argued November 9, 1995 (Calendar No. 10).
Decided March 19, 1996.

Fire Insurance Exchange, insurer of Clifford and Michelle Buck-
master and their minor son under a homeowner's policy,
brought an action in the Oakland Circuit Court against Mary
Ann Diehl, individually and as next friend of her minor daugh-
ter, and the Buckmasters, seeking a declaration that the com-
pany was under no duty either to defend or indemnify its
insureds in an underlying civil action. In that action, Mary
Ann Diehl sought damages for the physical and emotional
injury of her minor daughter as a result of two instances of the
Buckmasters' minor son requesting Diehl's daughter to perform
fellatio, and her acquiescence. The insurer asserted that the
son's acts were not covered because they were excluded inten-
tional acts, because the harm from the acts was reasonably
foreseeable and because the injuries were neither expected nor
intended by the insured, and because the court was required to
infer the son's intent to injure as a matter of law. The court,
John N. O'Brien, J., granted the plaintiff's motion for sum-
mary disposition on the basis of the intentional-acts exclusion,
and ruled that it applied because a reasonable adult could have
foreseen the harm that resulted from the acts. The Court of
Appeals, Hood, P.J., and Neff and T. E. Jackson, JJ., reversed,
finding that the intentional-acts exclusion required a mixed
objective-subjective standard of foreseeability, i.e., whether a
reasonable child of like age, ability, intelligence, and experi-
ence under like circumstances would have foreseen the harm,
and refused to infer as a matter of law that the child actor
intended to injure the victim (Docket No. 147298). The plaintiff
appeals.

In an opinion by Chief Justice BRICKLEY, joined by Justices
LEVIN, CAVANAGH, and MALLETT, the Supreme Court held:

The policy may cover the incidents if a jury finds that the
injury resulting from the child actor's conduct was not reason-
ably foreseeable to a child of like age, ability, intelligence, and
experience under like circumstances. If a policy excludes cover-
age for intentional acts where the result is reasonably foresee-
able, reasonable foreseeability for an insured child should be

judged under a mixed objective-subjective standard. It should not be inferred as a matter of law that child actors intend the harm that results from their sexual assault of a victim because children, as a group, do not have the capacity to understand the consequences of sexual acts.

1. The occurrence section of this policy includes the child actor's assaults if the injuries were neither expected nor intended by the insured. The definition of "occurrence" in the policy as an event neither expected nor intended by the insured requires the application of a subjective standard. Because there is no evidence at this stage in the trial that the child actor subjectively intended the harm that resulted from the assaults, summary judgment must be denied.

2. Where a child is involved, the reasonable foreseeability of a result should be judged under a mixed objective-subjective standard. The phrase "reasonably foreseeable" is ambiguous when applied to a child. Because it is contained in an exception, it is to be construed in favor of the insured. Under the rule of reasonable expectation, it is unlikely that a policyholder would reasonably expect that a covered child's actions would be judged by an objective adult standard because of the unexpected results. A reasonable expectation is for a child to be held to a lesser standard of foreseeability. Adapting the negligence standard for children to the concept of reasonable foreseeability under the policy, whether a result is reasonably foreseeable to a child should be a question of fact for the jury, which is to determine it on the basis of whether a child of like age, ability, intelligence, and experience reasonably would have been expected to foresee the injury under like circumstances. Under the terms of the policy, summary judgment is inappropriate because foreseeability is an issue for the jury.

3. For purposes of civil liability insurance, when an adult sexually assaults a child, an intent to injure is inferred as a matter of law. However, such an intent should not be inferred as a matter of law where a child is the assailant.

Remanded.

Justice RILEY, joined by Justices BOYLE and WEAVER, dissenting, stated that the insurance contract did not provide coverage for the injury caused by the insured child's intentional conduct. Because of the inherently harmful nature of the conduct, an intent to injure should be inferred as a matter of law.

When an adult sexually assaults a minor, an intent to harm is inferred as a matter of law regardless of whether the insured claims there was no subjective intent to harm the victim. The rationale for inferring intent as a matter of law for this kind of

sexual abuse is based on the inherently harmful nature of child molestation. A person who intends to commit this act also intends harm. Because the child in this case intended to commit this act, his intent to harm may be inferred.

A child seven years or older may be capable of negligence or of committing an intentional tort. Inferring the child's intent to harm is consistent with the reasonable expectations of the parties. By entering this insurance contract, the parties agreed that only certain events would be covered by the insurer. Specifically, the insurance contract covers a sudden event, including continuous or repeated exposure to the same conditions, that results in bodily injury neither expected nor intended by the insured. The child's decision to commit these abusive acts cannot reasonably be described as a sudden event. The insureds could not reasonably have expected that their child's intentional and inherently harmful conduct would be protected by their insurer when the child was also subject to tort liability under Michigan law.

206 Mich App 108; 520 NW2d 675 (1994) remanded.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt, Evelyn C. Tombers,* and *Maurice A. Borden*), for the plaintiff.

*Campbell, Keenan, Harry, Cooney & Karlstrom, P.C.* (by *C. Daniel Harry*), for the defendants.

BRICKLEY, C.J. In this case we decide if a homeowner's insurance policy covers the injury resulting from a child actor's requests for the child victim to perform fellatio and the child victim's acquiescence. We find that the policy may cover the incidents if a jury finds that the injury resulting from the child actor's conduct was not reasonably foreseeable to a child of like age, ability, intelligence, and experience under like circumstances.

Reaching this conclusion, we find that if the policy excludes coverage for intentional acts where the result is "reasonably foreseeable," reasonable foreseeability for an insured child should be judged under a mixed objective-subjective standard.

As a separate holding, we also decline to infer, as a matter of law, that child actors intend the harm that results from their sexual assault of a victim.[1] The inference is inappropriate because children, as a group, do not have the capacity to understand the consequences of their sexual acts.

### FACTS

On two distinct occasions the male child actor requested the victim to perform fellatio and the victim complied. At the time of the first incident, the child actor was about six or seven years old. At the time of the second incident, the child actor was nine years old. The victim is younger than the actor. Neither party disputes that the child actor intended the act.

The child actor's deposition testimony emphasizes that, although the child actor intended his acts, he was unaware that the acts could hurt.

Q. Did you have any idea that you would be hurting [the victim]?
A. No.
Q. Did you ever mean to hurt [the victim]?
A. No.
Q. [The victim] was your friend, wasn't she?
A. Yes.
Q. Did you have any idea that you may be hurting [the victim] in her head?
A. No.
Q. Did you have any idea whether or not you were hurting [the victim] on her body?
A. No.

Testifying about the second incident the child

[1] We reserve for a future case, determination of the appropriate minimum age to infer as a matter of law that children intend the harm that results from their sexual acts.

actor still maintained that he did not know he was
hurting the victim.

> *Q.* All right. Did you know you were hurting
> [the victim] then?
> *A.* No.
> *Q.* Did you mean to hurt [the victim] in any way
> then?
> *A.* No.

The victim's mother learned of the assaults and
brought a civil action for physical and emotional
damages against the child actor and his parents.
Separately, Fire Insurance Exchange (plaintiff),
who covered the actor and the actor's parents
under a homeowner's policy, filed this action, seek-
ing a declaratory judgment that the company was
under no duty either to defend or indemnify the
assailant or the assailant's parents in the action
arising from the sexual assaults. Plaintiff based its
summary judgment motion on the terms of the
homeowner's policy.

Plaintiff asserted that the child actor's acts were
not covered because the policy only covered injury
that was "neither expected nor intended by the
insured," and because the policy excluded coverage
for intentional acts. The intentional-acts exclusion
was based on the foreseeability of harm that re-
sulted from such acts. Plaintiff also argued that,
despite the child actor's assertions that he did not
intend to hurt the child victim, the court must
infer the child actor's intent to injure the victim
as a matter of law. The trial court granted
plaintiff's motion for summary disposition on the
basis of the intentional-acts exclusion. The trial
court ruled that the intentional-acts exclusion ap-
plied because a reasonable adult could have fore-
seen the harm that resulted from the acts.

The Court of Appeals reversed. It declined to impose on a minor the objective standard of foreseeability used by the trial court. Instead, it interpreted the intentional-acts exclusion to require a mixed objective-subjective standard of foreseeability. It announced this standard as being whether "a reasonable child of like age, ability, intelligence, and experience under like circumstances" would have foreseen the harm. *Fire Ins Exchange v Diehl,* 206 Mich App 108, 119; 520 NW2d 675 (1994). The Court arrived at this standard by adapting the negligence standard for minors to the concept of foreseeability. *Id.* It also refused to infer as a matter of law that the child actor intended to injure the victim. *Id.* at 118.

### THE INSURANCE POLICY

This Court must now address plaintiff's motion for summary judgment by deciding if plaintiff's policy would cover sexual assaults by minors where a minor intends the act but is unaware that harm could result. An insurance policy is a contract between the parties. To decide whether a policy covers a particular act, the court must determine what the parties agreed to in the policy. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566; 489 NW2d 431 (1992). To determine what the parties agreed to, the court applies a two-part analysis. In the first part, the court must decide if the occurrence section of this policy includes a particular act. If so, the court then must decide if coverage is denied under one of the policy's exclusions. *Heniser v Frankenmuth Mut Ins Co,* 449 Mich 155, 172; 534 NW2d 502 (1995).

We find that the occurrence section of this policy includes the assaults in this case. The policy states:

[Fire Insurance Exchange] shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury or property damage covered by this policy. At our expense we shall defend an insured against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper.

The policy also provides a definition of "occurrence."

[A] sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured.

Therefore, the policy covers the present assaults if the injuries were "neither expected nor intended by the insured."

Because, in this case, the child actor intended the acts but did not intend the injuries, we must determine whether the phrase "neither expected nor intended by the insured" excludes broad policy coverage for all injuries if the injuries were objectively intended, or whether the phrase only excludes coverage for injuries subjectively intended by the insured. In *Allstate Ins Co v Freeman*, 432 Mich 656, 709; 443 NW2d 734 (1989), a majority of this Court held that the following policy required the use of an objective standard:

We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

Comparatively, a majority of this Court held that the following policy exclusion required the use of a subjective standard:

[The policy excludes b]odily injury or property damage which is either expected or intended from the standpoint of the insured. [*Id.* at 708. (See also opinions by ARCHER, CAVANAGH, and LEVIN, JJ.)]

Explaining the distinction, Justice BOYLE noted that the first policy required an objective standard because, of the two exclusionary phrases in the policy, the first exclusionary phrase applied to injury "reasonably" expected, and the policy counterpoised the first exclusionary phrase to the second phrase that applied if the injury was "in fact intended." Therefore, the first phrase must require application of an objective standard or the word "reasonably" loses its meaning and the second exclusionary phrase is redundant. *Id.* at 709. On the other hand, the policy exclusion from the second policy did not contain the word "reasonably," but instead employed the phrase "from the standpoint of the insured." This language required application of a subjective standard. *Id.*

⁚ The language of plaintiff's policy places the policy somewhere between the two policies at issue in *Freeman.* Although the policy does not employ the term "reasonably," the phrase "from the standpoint of the insured" is also absent. Yet, even without these aids we find that the definition of "occurrence" in plaintiff's policy also requires the application of a subjective standard. The policy states that it applies to "bodily injury . . . neither expected nor intended *by the insured.*" (Emphasis added.) The manner in which the policy employs the phrase "by the insured" suggests that the emphasis of the policy is on whether the insured expected or intended the injury.

Additionally, in *Auto-Owners Ins Co, supra* at 567-568, a majority of this Court held that a policy exclusion for injury " 'expected or intended by an

insured person,' is unambiguous and requires a subjective intent . . . ." We find no substantial difference between the policy exclusion language in *Churchman* and the disputed phrase in plaintiff's policy's definition of "occurrence." Therefore, we hold that the definition of "occurrence" in plaintiff's policy requires the application of a subjective standard. Because there is no evidence at this stage in the trial that the child actor subjectively intended the harm that resulted from the assaults, summary judgment on the basis of the policy's definition of "occurrence" is denied.

## INTENTIONAL-ACTS EXCLUSION

The Court must next consider whether the policy's intentional-acts exclusion denies coverage for the assaults at issue. The intentional-acts exclusion has two parts.

> We do not cover bodily injury or property damage:
>
> *     *     *
>
> 3. Either:
> a. caused intentionally by or at the direction of an insured, or
> b. resulting from any occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable.

We will consider each part of the exclusion separately.

This Court has previously interpreted the language in part a of the exclusion. In *Putman v Zeluff,* 372 Mich 553, 557; 127 NW2d 374 (1964), this Court held that an exclusion barring recovery for injury "caused intentionally by or at the direction of the insured" excluded coverage only when

the insured caused the *injury* intentionally. *Id.* at 555. Because the first part of plaintiff's exclusion is the same as the exclusion in *Putman,* the first part of the intentional-acts exclusion only applies to the assailant if the assailant intended to cause the injury. Because there is no evidence showing that the assailant intended the injury, the first part of plaintiff's intentional acts exclusion does not bar coverage.

However, this Court has not yet interpreted part b of the exclusion. On the basis of part b's language, two elements are necessary before an act is excluded. First, the "occurrence" must result from an insured's intentional act. This element is satisfied in the present case in that the assailant intended the sexual assaults. Second, the results must be "reasonably foreseeable." The question we face is, By what standard should we measure reasonable foreseeability?

Answering this question, we are guided by three principles of insurance policy interpretation. First, although the court cannot create an ambiguity in an otherwise clear policy, if the policy contains an ambiguity, the ambiguity will be construed in favor of the insured. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 402-403; 531 NW2d 168 (1995). Second, this Court strictly construes against the insurer exemptions that preclude coverage for the general risk. *Vanguard Ins Co v Clarke,* 438 Mich 463, 472; 475 NW2d 48 (1991). Finally, under the rule of reasonable expectation, the court grants coverage under the policy if "the policyholder, upon reading the contract language is led to a reasonable expectation of coverage." *Powers v DAIIE,* 427 Mich 602, 632; 398 NW2d 411 (1986). These three principles of interpretation lead us to conclude that for a child the reasonable foreseeability of the result should be

judged under a mixed objective-subjective stan-
dard.[2]

We reach this conclusion because the phrase
"reasonably foreseeable" is ambiguous when ap-
plied to a child. The policy could be read to apply
either when the result is reasonably foreseeable to
an objective adult, or when the result is reason-
ably foreseeable to a similar child. Because the
phrase "reasonably foreseeable" is ambiguous and
because it is contained in an exception, we will
construe it in favor of the insured and apply a
mixed objective-subjective standard.

This mixed standard is also required by the rule
of reasonable expectation. We find it unlikely that
a policyholder reading the intentional-acts exclu-
sion would reasonably expect that a covered child's
actions would be judged by an objective adult
standard because of the unexpected results. The
reasonable expectation is for a child to be held to a
lesser standard of foreseeability than an adult.

Applying these principles, we agree with the
Court of Appeals and choose to adapt the negli-
gence standard for children to the concept of
reasonable foreseeability under plaintiff's insur-
ance policy. Whether a result is reasonably fore-
seeable to a child should be "a question of fact for
the jury, which is to determine it on the basis of
whether . . . a child of [like] age, ability, intelli-
gence and experience would reasonably have been
expected to [foresee the injury] under like circum-
stances." *Burhans v Witbeck,* 375 Mich 253, 255;
134 NW2d 225 (1965). Therefore, under the terms

─────────

[2] We do not wish to imply that the interpretation of this exclusion
in plaintiff's policy in any way impacts our decisions in *Baker v Alt,*
374 Mich 492; 132 NW2d 614 (1965), *Burhans v Witbeck,* 375 Mich
253; 134 NW2d 225 (1965), and *Queen Ins Co v Hammond,* 374 Mich
655; 132 NW2d 792 (1965). Those cases address the incapacity of
minors under age seven to commit negligence, intentional torts, or
crimes. They apply regardless of the policy language interpreted.

of plaintiff's insurance policy, summary judgment is inappropriate because foreseeability is an issue for the jury.

### INTENT TO INJURE AS A MATTER OF LAW

Finally, we address plaintiff's contention that the intent to injure must be inferred as a matter of law.[3] For purposes of civil liability insurance, when an adult sexually assaults a child, the Court of Appeals has inferred the intent to injure as a matter of law. *State Mut Ins Co v Russell*, 185 Mich App 521, 526-527; 462 NW2d 785 (1990). The Court of Appeals decision is consistent with decisions in many other jurisdictions.[4] We agree that

[3] Our decision with respect to the applicability of the intent inference is not based on policy interpretation. The existence of the inference is a topic separate from the interpretation of any one insurance policy, but applicable to all insurance policies.

[4] Apparently at this point thirty-six other jurisdictions have also adopted the inference when an adult sexually assaults a minor. Those states are Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Vermont, Virginia, Washington, West Virginia and Wisconsin. See cases listed in *State Farm Fire & Casualty Co v Davis*, 612 So 2d 458, 463-464, n 4 (Ala, 1993), and the following more recent authority, *Allen v Automobile Ins Co of Hartford Connecticut*, 892 SW2d 198 (Tex App, 1994), *Auto-Owners Ins Co v Brubaker*, 93 Ohio App 3d 211; 638 NE2d 124 (1974), *Nationwide Mut Fire Ins Co v Lajoie*, — Vt —; 661 A2d 85 (1995), *MAB v Nicely*, 911 SW2d 313 (Mo App, 1995); *Peerless Ins Co v Viegas*, 667 A2d 785 (RI, 1995), and *Thompson v West American Ins Co*, 839 SW2d 579 (Ky App, 1992).

Generally, these courts reason that the inference of the intent to injure should be applied because the act of child molestation is inherently harmful. *B B v Continental Ins Co*, 8 F3d 1288, 1293 (CA 8, 1993).

> "The [inferred-intent] approach . . . stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so

courts should infer the intent to injure where an adult sexually assaults a child. However, we conclude that the intent to injure should not be inferred as a matter of law where a child is the assailant.[5]

We find that inferring as a matter of law the intent to injure where a child sexually assaults another individual is inappropriate. Children, as a group, do not have the capability to understand the consequences of their sexual acts. Additionally, it defies the reasonable expectation of the insured parents to suggest that their insurance policies could not cover the harm from certain sexually motivated acts undertaken by their children. The present case is an example of a situation in which insured parents would expect coverage.

In a deposition, the child actor testified that he had stayed up late at night and watched "bad movie[s]" at his grandparent's house. In one movie he saw people "mating." But when the child actor saw the movie, he did not perceive that the people "mating" in the movie could be harming each other.

> *Q.* I think you told us a minute ago that you've seen people mating on television, right?
> *A.* Yes.
> *Q.* Did it look like they were hurting each other?

---

substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct liability insurance cases involving minors." [*Id.,* quoting *Whitt v DeLeu,* 707 F Supp 1011, 1016 (WD Wis, 1989).]

[5] We also note that other jurisdictions have reached contrary results. However, we find these cases unpersuasive. See, e.g., *Allstate Ins Co v Bailey,* 723 F Supp 665 (MD Fla, 1989), *Allstate Ins Co v Roelfs,* 698 F Supp 815 (D Alas, 1987), *B B v Continental Ins Co,* n 4 supra, and *DWH v Steele,* 512 NW2d 586 (Minn, 1994).

*A.* No.

*Q.* Did it look like they were having fun?

*A.* No.

*Q.* Did you ever think in watching that that they were hurting each other?

*A.* No.

The child actor also testified that his mother did not warn him that such conduct could injure the victim when his mother previously discovered that he had engaged in similar sexually experimental conduct with another boy. The child actor's mother only told him that he should not engage in such behavior "[b]ecause it's not nice."

Understanding that parents and television often have a major effect on children's lives, this child found himself in a position in which he was exposed to media images of sexual conduct, in which he was himself exploring sexual conduct, and yet in which he was uninformed of the potential consequences of such conduct. Because of a child's developmental status, it is likely that many minors may be exposed to aspects of sexual activity, attempt to experiment with such activity, and yet not have the capacity to understand the consequences of their sexual acts. This is the type of situation in which insured parents would expect they could obtain insurance to protect them. Therefore, the inference of an intent to injure as a matter of law when a child is sexually assaulted should not apply to child assailants.

### REMEDY

In conclusion, we remand this case to the circuit court for entry of an order denying plaintiff's motion for summary judgment.

Remanded.

LEVIN, CAVANAGH, and MALLETT, JJ., concurred with BRICKLEY, C.J.

RILEY, J. (*dissenting*). Because I believe that the insurance contract did not provide coverage for the injury caused by the insured child's intentional conduct, I respectfully dissent. Although the majority accepts the rule that this Court should infer an intent to injure as a matter of law for an adult who sexually assaults a child, it refuses to infer this intent for a child who sexually assaults another child. The majority concludes that the contract covered the injury in the present case because the insured child did not subjectively intend to harm the victim. *Ante,* p 687. I disagree with this reasoning. In this case, the male child was either seven or eight years old when he first forced the female child victim[1] to perform fellatio on him, and was nine years old when he repeated this sexually abusive conduct against her.[2] Because of the inherently harmful nature of his conduct, I would infer his intent to injure her as a matter of law. I would reverse the Court of Appeals decision and reinstate the circuit court's grant of summary disposition in favor of the insurer, plaintiff Fire Insurance Exchange.

I

As a general principle of insurance law, the

[1] The child victim was four or five years old when the first incident occurred, and was six years old when the second incident occurred.

[2] The majority mistakenly states that the male child was only six or seven years old at the time of the first incident. *Ante,* p 681. The first amended complaint brought by the victim's parents alleged that the first incident occurred in either summer of 1988 or 1989 and that the second occurred in July 1990. Because the male child turned ten years old in November 1990, he would have been either seven or eight years old when the first incident occurred and nine years old when the second occurred. See *Fire Ins Exchange v Diehl,* 206 Mich App 108, 110; 520 NW2d 675 (1994).

burden of proof lies with the insured to show that the damage suffered was covered by the insurance policy. *Williams v Detroit Fire & Marine Ins Co,* 280 Mich 215, 218; 273 NW 452 (1937). In examining an insurance contract, this Court first determines if the insured was indemnified by the insurer. As this Court explained in *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566-567; 489 NW2d 431 (1992):

> An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. *Eghotz v Creech,* 365 Mich 527, 530; 113 NW2d 815 (1962). Accordingly, the court must look at the contract as a whole and give meaning to all terms. *Fresard v Michigan Millers Mut Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982).

The insurance contract between Fire Insurance and the insureds provided that it would cover personal liability arising from an "occurrence":

> We shall pay all damages from an occurrence which the insured is legally liable to pay because of bodily injury or property damage covered by this policy.
>
> At our expense we shall defend an insured against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper.

The contract defined an "occurrence" as:

> [A] sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage *neither expected nor intended by the insured.*

As the majority correctly notes,[3] this Court has held that an exclusionary insurance provision, containing similar language to the definition of "occurrence" in the present case, requires the application of a subjective standard. *Churchman, supra* at 567-568.[4] However, in examining virtually the same "occurrence" provision as the present one, a plurality of this Court stated a more refined version of this standard by concluding that the subjective standard was "policy-blended," distinguishable from a purely subjective standard. See *Frankenmuth Mut Ins Co v Piccard,* 440 Mich 539, 547, 549-550; 489 NW2d 422 (1992) (RILEY, J., joined by BRICKLEY and MALLETT, JJ.).[5] I believe this description of the test is more accurate. Rather than merely attempting to determine whether the insured subjectively intended to injure the victim, this Court also reviews the intentional conduct and examines other considerations to determine whether we should infer intent as a matter of law. The majority employed this analysis

[3] *Ante,* p 686.

[4] See also *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 404, 407-409; 531 NW2d 168 (1995) (holding that a similar definition of "occurrence" in an insurance contract created a subjective standard).

[5] The insurance contract in *Piccard,* defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*" (Emphasis added.)
See also *Auto Club Group Ins Co v Marzonie,* 447 Mich 624, 640-641; 527 NW2d 760 (1994) (RILEY, J., joined by BOYLE and MALLETT, JJ.) (describing the policy-blended subjective test for a similar phrase in an exclusionary provision); *Churchman, supra* at 576-577 (RILEY, J., concurring) (describing the policy-blended subjective test for a similar phrase in an exclusionary provision); *Allstate Ins Co v Freeman,* 432 Mich 656, 720; 443 NW2d 734 (1989) (BOYLE, J., joined by BRICKLEY, J.) (in interpreting a similar phrase in an exclusionary provision, Justice BOYLE approvingly cited cases in which an intent to injure was inferred from the harmful conduct as a matter of law: she concluded in that case that "I cannot say on the present facts that the denial of an intent to injure 'flies in the face of all reason, common sense and experience' . . . .").

in the present case, but decided that the parties' expectations and the child's incapacity made it "inappropriate" to infer an intent to harm as a matter of law. *Ante,* pp 689-691. There is no dispute that the male child denied that he intended to harm the victim even though he admitted to intending to commit the sexually abusive acts.

## II

### A

I share the majority's view that when an adult sexually assaults a minor, this Court should infer an intent to harm as a matter of law regardless of whether the insured claims that he did not subjectively intend to harm the victim. *Id.,* pp 689-690.[6] However, the majority refuses to apply this rule to a child who sexually abuses another child on the grounds that children do not "have the capability to understand the consequences of their sexual acts" and because such an inference would "def[y] the reasonable expectation of the insured parents . . . ." *Id.,* p 690.

I disagree. The United States Court of Appeals for the Eighth Circuit explained that the rationale for inferring intent as a matter of law for this kind of sexual abuse "is based on the inherently harmful nature of child molestation." *B B v Continental Ins Co,* 8 F3d 1288, 1293 (CA 8, 1993). Such conduct is inherently harmful regardless of the

---

[6] See *State Mut Ins Co v Russell,* 185 Mich App 521; 462 NW2d 785 (1990); *Auto-Owners Ins Co v Gardipey,* 173 Mich App 711, 715; 434 NW2d 220 (1988); *Linebaugh v Berdish,* 144 Mich App 750, 762; 376 NW2d 400 (1985). See also *Piccard, supra* at 553 (RILEY, J., joined by BRICKLEY and MALLETT, JJ.) ("[W]e conclude that the unforeseen consequences of an insured's intentional criminal act will preclude coverage where the conduct is addressed directly at the innocent person . . ., or the criminal conduct constitutes the injury" [citations omitted]).

age of the person who inflicts the injury. Any person who could decide to force another to perform such a sexually intimate act must also have had the intent to cause harm because the harm inheres in the abusive act itself. In other words, where a person intends to commit this act, he also intends the harm. See *id.* at 1293.[7] Here, there is no dispute that the male child intended to commit this act. Thus, I conclude that we may infer his intent to harm.[8]

The majority refuses to extend this inference

---

[7] The parents of the victim, who are the appellees, also cite *Connecticut Indemnity Co v Nestor,* 4 Mich App 578; 145 NW2d 399 (1966). In *Connecticut Indemnity, supra* at 579-581, an eight and a half-year-old boy, Brad Nestor, intentionally started a fire that caused $6,851.91 of damage to another family's home, but he did not have the intent to cause any damage. The Nestor family insurance policy contained an exclusionary provision that "bodily injury or property damage caused intentionally" was not covered. The Court of Appeals concluded that the trial court properly found that Brad intended the act but not the result and, therefore, the Nestors were protected by their insurer. The present case is distinguishable because the minor's conduct here was *inherently harmful.* He forced a girl under six years old to perform fellatio on him. There is no distinction between intending to commit this act and intending to harm her.

[8] See also *Gardipey,* n 6 *supra* at 713 (the Court of Appeals inferred an intent to harm where an eighteen-year-old man sexually abused a ten-year-old boy, even though the man was "borderline mentally retarded").

Other jurisdictions have reached similar results in examining a minor's sexual molestation of another minor. See, e.g., *B B, supra* at 1293-1294, 1296 (a minor was between fourteen and fifteen years old when he committed the sexually abusive acts: "[W]e hold that evidence of incapacity based on the age of the insured has no bearing on the application of the inferred-intent standard"); *Allstate Ins Co v Roelfs,* 698 F Supp 815, 820 (D Alas, 1987) (sixteen years old); *Allstate Ins Co v Bailey,* 723 F Supp 665, 669 (MD Fla, 1989) (fifteen years old); *DWH v Steele,* 512 NW2d 586, 589 (Minn, 1994) (eleven years old): "[W]e reject D.H.'s claim that, because he was but 11 or 12 years of age when the alleged assaults occurred, he could not form the requisite intent to injure and should be covered under the policy. [Citation omitted.] ([I]n cases involving nonconsensual sexual contact, the court infers intent to harm as a matter of law and without regard to the insured's subjective view)"; *Illinois Farmers Ins Co v Judith G,* 379 NW2d 638, 641-642 (Minn App, 1986) (between thirteen and sixteen years old). But see *Allstate Ins Co v Jack S,* 709 F Supp 963, 966 (D Nev, 1989) (fourteen years old).

because children do not have the "capacity to understand the consequences of their sexual acts." *Ante,* p 681. However, this statement contradicts the general rule in Michigan that allows a jury to find a child seven years or older capable of negligence or of committing an intentional tort. *Burhans v Witbeck,* 375 Mich 253, 255; 134 NW2d 225 (1965).[9] Only a child under the age of seven is incapable of negligence or of committing an intentional tort as a matter of law. *Id., Queen Ins Co v Hammond,* 374 Mich 655, 658; 132 NW2d 792 (1965).

In this case, the parents of the victim sued the male child and his parents for the nonconsensual sexual conduct and sued the parents for negligent supervision.[10] Because a person seven years or older may be capable of committing a tort under Michigan law, the male child must defend himself from the allegation that he forced the victim to perform fellatio on him. If the injury he intentionally caused is covered by the insurance contract, the insurer would be responsible for defending him in the suit.[11]

Moreover, I am unpersuaded that inferring the child's intent to harm would be inconsistent with the reasonable expectations of the parties. By entering this insurance contract, the parties

[9] This Court requires the jury to determine as a question of fact whether a child had the capacity to commit a tort by comparing that child to what a child of the same age, ability, intelligence, and experience would reasonably have been expected to do under similar circumstances. *Id.* See also *Serra v DeMaestri,* 66 Mich App 171, 175; 238 NW2d 568 (1975) (the Court of Appeals noted that a child seven years or older is liable for his intentional torts as well as for ordinary negligence).

[10] Although not stated in the underlying complaint, plaintiff noted in this Court that the action against the male child was a negligence claim.

[11] In fact, Fire Insurance Exchange did defend the insureds in the underlying action brought by the victim's family, reserving its rights pending the resolution of this case.

agreed that only certain events would be covered by the insurer. Specifically, the insurance contract covers a "sudden event," including continuous or repeated exposure to the same conditions, that results in "bodily injury . . . neither expected nor intended by the insured." The male child's decision to commit these abusive acts cannot reasonably be described as a "sudden event." Also, the insureds could not have reasonably expected that their child's intentional and inherently harmful conduct would be protected by their insurer when this child was also subject to tort liability under Michigan law. See *Burhans, supra* at 255.

B

Furthermore, I believe that the majority's ruling is inconsistent with this Court's decision to conclude that there was an intent to harm in an analogous situation, where an adult intentionally committed an act injuring another, but claimed not to have had the subjective intent to harm the victim, either because of mental incompetence, see *Churchman, supra,* or diminished capacity, see *Group Ins Co of Michigan v Czopek,* 440 Mich 590; 489 NW2d 444 (1992). The majority does not explain why these cases are distinguishable.

In *Churchman, supra* at 563-565, Henry Frost, an insured adult, murdered his girlfriend's former husband by shooting him four times, and then he killed himself. For the purposes of the appeal, the parties stipulated that Frost did not have the requisite mental capacity to form the criminal intent to commit murder at the time of the killing, apparently because he was a paranoid schizophrenic. See *id.* at 564, n 1. See also *id.* at 581

(LEVIN, J., dissenting). This Court reviewed the exclusionary provision of the insurance contract, which stated that the insurer did not provide coverage for a "bodily injury or property damage expected or intended by an insured person." *Id.* at 566. This Court concluded that an insane or mentally ill person can intend or expect the results within the meaning of the insurance policy's exclusionary clause and that the insured did intend to seriously injure the victim because he "was capable of foreseeing the[ ] consequences [of his acts] and understanding what he was doing . . . ." *Id.* at 568, 569-570. By analogy, if this Court will find an intent to harm from the intent to perform the act that caused the injury (shooting the victim) for an adult who is incompetent, i.e., cannot distinguish between right and wrong, surely this Court may also infer such an intent for a child who intentionally sexually abuses another.

In *Czopek, supra* at 592-595, Arthur Smith was drunk when he assaulted two police officers while resisting arrest. He admitted that he intended to resist arrest, but denied that he intended to bite or strike the officers, and he denied that he intended to harm them. This Court concluded that this assault was not an "occurrence" as defined by the insurance contract[12] because it was not an accident. *Id.* at 598. Thus, this Court decided that insurance coverage was barred. *Id.* The Court also rejected the contention that Smith's intoxication vitiated his intent, but held that "[a]n intoxicated person is responsible for his actions" because otherwise it would create a "precedent of self-immunity." *Id.* at 601. Similarly, this Court should not immunize a family that fails to protect its children

---

[12] The insurance contract did not require that the bodily injury not be expected or intended but only that it be an "accident." *Id.* at 596.

from the kinds of pernicious influences[13] that culti-
vate such wrongful sexual conduct.

The majority reasons that "it is *likely* that
many minors may be exposed to aspects of sexual
activity, attempt to experiment with such activity,
and yet not have the capacity to understand the
consequences of their sexual acts." *Ante,* p 691
(emphasis added). The majority overstates the like-
lihood that this kind of sexually abusive conduct
will occur and undervalues the significance of the
parent's duty to protect their children from expo-
sure to immoral or irresponsible sexual images.
Moreover, I fear that the majority trivializes the
harm inflicted by the child in this case by describ-
ing his conduct as a sexual "experiment," rather
than stating the sad reality that it was a sexual
assault.

### CONCLUSION

The majority's result fails to integrate the inher-
ently harmful nature of this sexual abuse, does not
comport with the reasonable expectations of the
parties in entering this contract, and is not consis-
tent with this Court's previous treatment of simi-
lar issues. I would conclude that the insurance
policy does not cover the child's intentional con-
duct as an "occurrence" because his intent to
harm may be inferred from the nature of his acts.
I would reverse the Court of Appeals decision and
would reinstate the trial court's grant of summary

[13] The majority notes that the male child got this idea from appar-
ently viewing pornography. *Ante,* pp 690-691. After the male child
had made another young boy perform fellatio on him, the child's
mother merely told him that such conduct was "not nice." The
majority's decision to refuse to infer an intent to harm allows the
possibility that these parents will be protected by their insurer
despite their failure to be vigilant in teaching their son respect for
himself and respect for the dignity of others.

disposition in favor of plaintiff Fire Insurance Exchange.

BOYLE and WEAVER, JJ., concurred with RILEY, J.